[No. 35540.    Department One.    May 18, 1961.]

JOHN W. ODGERS, *Appellant,* v. GEDALIAH HELD *et al.,*
*Respondents and Cross-appellants.**

*Wayne A. Wyman,* for appellant.

*Bayley, Fite, Westberg & Madden,* for respondents and
cross-appellants.

WEAVER, J.—August 1, 1958, plaintiff, as builder, and de-
fendants, as owners, entered into a written contract for
the construction of a residence on defendants' property for:

"Total cost, plus a fixed fee of $1300.00. Total costs in-
clude labor, sub-contractors and materials; plus agreed 10¢
health and welfare and 8% of wages as overhead."

*Reported in 362 P. (2d) 261.

Plaintiff built the house; defendants have paid him $25,450.

Plaintiff commenced this action to foreclose a lien for the unpaid balance, alleged to be $2,821. Defendants cross-complained for $17,500 damages for faulty construction.

The following findings of fact stand unchallenged:

Plaintiff placed the house ten feet nearer the front of the lot than the plans provided. This made the angle of the driveway so sharp and the grade so steep "that the use of the basement double garage is impractical." Moving the house forward placed the front foundation upon loose, uncompacted fill and caused the front footings and foundation to sink, the concrete floor slab of the garage and driveway to crack, the supports for all structural support along the front wall of the house to sink, and the plaster to crack. It was necessary to install heavy cribbing for temporary support to prevent the threatened destruction of the entire structure. Provisions of the city's building code prohibited construction of the house on uncompacted fill.

Without request or approval of defendants, plaintiff omitted concrete walls that were to project east and north from the north corner, and east and south from the south corner of the foundation walls. The design of the entrance way was substantially changed, the size of beams used in the structural portions of the house and the basement was reduced, and one supporting post was omitted from the patio support at the rear of the house. Two concrete patios were not laid in a workmanlike manner; one has cracked, the other does not drain properly. The roof leaks because flashings were improperly installed.

Plaintiff appeals from a judgment dismissing his complaint with prejudice and granting judgment against him for $5,000. Defendants cross-appeal, urging the insufficiency of the judgment.

▪ The purpose of actions such as this is to place the parties in the position, at least moneywise, they would have been in had the contract been fulfilled. Satisfaction for contractual default by the builder is made by giving the owner a sum of money sufficient to produce the physical product

contracted for or the exchange value the product would have had if it had been constructed as agreed. To accomplish this, plaintiff is entitled to credit for (a) the cost of construction and (b) his fixed fee of $1,300. Defendants are entitled to credit for (a) the amount paid and (b) the damages suffered. One must be set off against the other, and judgment entered accordingly.

Plaintiff's principal assignment of error is directed to the court's finding that he

" . . . has not sustained the burden of proof and established by the preponderance of the evidence the amount of any unpaid balance owing from the defendants and that, therefore, no relief can be granted to the plaintiff upon his complaint."

Plaintiff's accounting method and its presentation to the trial court is shockingly informal, and, as defendants state in their brief, "cannot be calculated to inspire the confidence of the trier of the facts."

We are confronted, however, with the fact that plaintiff furnished labor and materials to build the house, and he is entitled to credit for them. A detailed analysis of plaintiff's written records admitted in evidence discloses a labor credit of $6,265.96, which includes health and welfare payments and an overhead of eight per cent of wages.

Plaintiff was constructing several houses at the time he was building defendants' house. Disregarding those invoices for materials not identified as being delivered to defendants' property, the invoices admitted in evidence for materials delivered to defendants' property and evidence of subcontracts total $20,559.89.

Since the purpose of this action is to place the parties in the same position, at least moneywise, that they would have been in had the contract been completed according to the plans and specifications, plaintiff is entitled to credit for the $1,300 fixed fee.

Thus, the record supports a finding that plaintiff is entitled to a total credit of $28,125.85.

Turning to defendants' side of the accounting, we find they are entitled to a credit of $25,450 paid to plaintiff and

to damages resulting from plaintiff's defaulture. The latter presents a more difficult problem.

By finding of fact VIII, the court found $4,745 to be the "reasonable cost of repairs" of certain specific items. This included the installation of a beam and foundation repair ($3,250); widening of the driveway "to provide as good access as possible" to existing garages ($500); cost of survey, structural and soil engineers ($595); and temporary cribbing ($400).

The court also found

". . . that the structure as built by the plaintiff and delivered to the defendants *does not comply with the terms of the contract between the parties* and that by reason thereof the defendants have been damaged in the sum of $5,000.00 [$255 more than repairs listed in paragraph No. VIII of Findings of Fact] representing the cost of restoring the structure substantially to a condition in compliance with the plans and taking into consideration the difference in value between the structure as built and located upon the defendants' property and as it would have been had the house been built and located properly in accordance with the plans and in good and workmanlike manner." (Italics ours.)

■ Granted that the specific defects for which the court allowed damages are corrected, defendants would still not have the house for which they contracted. There is no evidence of the cost of moving the house approximately ten feet in order to have the front of the house on solid ground and the two-car garage usable, as contemplated by the plans and specifications. We believe it apparent from the facts that this additional cost would involve an unreasonable economic waste, for a new foundation would have to be constructed, at least part of the existing foundation demolished, and the house moved.

We conclude that under the correct rule of damages the record does not support the trial court's finding of $5000 damages allowed defendants on their cross-complaint, for the amount may not place them in the position to which they are entitled under the contract.

The rule applicable for the determination of defendants' damages is stated in 1 Restatement, Contracts, § 346:

"For a breach by one who has contracted to construct a specified product, the other party can get judgment for compensatory damages for all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:

". . .

"[a] (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff [owner; defendants in the instant case], if construction and completion in accordance with the contract would involve unreasonable economic waste."

In *White v. Mitchell,* 123 Wash. 630, 637, 213 Pac. 10 (1923), the evidence showed that it would cost about $2,500 to place a $4,000 dwelling in the condition it should have been had the builders complied with their contract. In reversing the trial court and holding that it had not applied the correct rule of damages, this court said:

". . . where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract. Generally, where there has not been such substantial performance, the measure of the owners' [*sic*] damage is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract. Such a recovery would be just to both parties. *It is manifest that to measure the owner's damage by the cost necessary to make the building conform to the contract would often be an injustice,* because in many instances such cost would amount to almost as much as the original contract price." (Italics ours.)

The rule of the *White* case, *supra,* has been applied to similar factual patterns in the following cases: *Forrester v. Craddock,* 51 Wn. (2d) 315, 317 P. (2d) 1077 (1957); *Bernbaum v. Hodges,* 43 Wn. (2d) 503, 261 P. (2d) 968 (1953); *Kenney v. Abraham,* 199 Wash. 167, 90 P. (2d) 713 (1939);

*Eckhardt v. Harder,* 160 Wash. 207, 294 Pac. 981 (1931); see *Baldwin v. Alberti, ante* p. 243, 362 P. (2d) 258 (1961).[1]

The judgment is reversed, and the case remanded for a new trial limited to a determination of defendants' damages consistent with the views expressed herein. When this determination is made, the credits due the parties shall be set off, one against the other, and judgment entered accordingly.

Both parties having prevailed in their respective contentions on appeal and cross-appeal, the appellate costs shall be borne equally, except each party shall bear the cost of his own brief.

It is so ordered.

MALLERY, DONWORTH, OTT and HUNTER, JJ., concur.

[1] Annotation: "Cost of correction or completion, or difference in value, as measure of damage for breach of construction contract." M. W. Moldoff, 76 A. L. R. (2d) 805 (1961).