[No. 38859.    Department One.    June 20, 1968.]

CLEON A. PRIER *et al.*, *Appellants*, v. REFRIGERATION
ENGINEERING COMPANY *et al.*, *Respondents*.*

*Reported in 442 P.2d 621.

*Casey & Pruzan,* by *John F. Kovarik,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *R. L. Gemson,* for respondents.

NEILL, J.—This is an action for damages arising out of the construction of an ice rink known as the Burien Ice Chalet. Plaintiff Chalet employed an architect and a general contractor to design and construct the building, and employed defendant to design and install the ice arena portion of the project. The architect had no experience in the design of refrigeration installations, so plaintiff directed him to consult with Mr. Frost, defendant's supervisor, on all details of this portion of the project. The architect and Mr. Frost consulted with each other, and defendant presented specifications for the refrigeration system and the base upon which the ice sheet would rest.

The base for the ice sheet as specified by defendant consisted of 2 feet of gravel covered by a plastic sheet under which dual purpose (ventilating and drainage) tiles were installed. Defendant was to install a system for forcing heated air through the tile, but failed to do so.

Plaintiff opened the ice rink for business on December 29, 1962. Within a short time heaving and unevenness of the ice surface was noted. Pools of water began to collect on the ice sheet. Investigation for the cause of this condition disclosed that freezing of the gravel and soil under the

ice sheet had occurred to a depth of 4 feet. Corrective action was necessary to prevent damage to the foundations of the building.

Plaintiff closed the business on July 31, 1963, and engaged soils engineers to determine the cause of the failure of the ice sheet and to recommend corrective measures. These engineers recommended that the gravel and tile be replaced with an insulated floor constructed on piers 2 feet above the ground surface and that positive heated air ventilation be provided in the air space. The engineers further found that, due to moisture condition in the soil, the ventilation system promised by defendant, but never installed, would have been inadequate, or only marginally effective.

The cost of the original project was approximately $157,000, of which some $36,000 was for defendant's services. Plaintiff arranged for defendant to make the suggested modifications. The following costs were incurred in completing the modification:

| | |
|---|---|
| Soils Engineers | $ 1,085.53 |
| Defendant's new contract | 10,345.92 |
| General contractor's new contract | 24,662.17 |
| Miscellaneous | 96.09 |
| Total | $ 36,189.71 |

No issue is raised as to the amount of these costs or as to the necessity for modification, but at trial defendant strenuously resisted the claim that it was liable therefor.

This action was originally brought against the architect, the general contractor, and defendant. The trial court dismissed the action as to the architect and general contractor, and plaintiff has not appealed that order.

The trial court found defendant liable in tort for negligently advising plaintiff that the ice sheet and base it designed would be suitable, and entered judgment against defendant in the sum of $20,000, computed as follows:

| | |
|---|---|
| General damages (the cost of the original project plus the cost of the repairs, minus the cost of the project had it been constructed properly) | $ 17,500 |
| Consequential damages (losses due to closure of the business) | $ 2,500 |

Interest was allowed from the date of judgment.

Defendant's liability is not at issue upon this appeal, except as to the theory upon which liability should be based. Plaintiff argues that it was error to base liability on tort rather than contract and that the trial court erred in failing to find that defendant made express and implied warranties that the ice sheet and designed base would be reasonably fit for its intended function.

Plaintiff asks for $36,189.71 general damages (the total cost of corrective measures), and $17,200 consequential damages for the following:

Losses prior to closing because of unsatisfactory
ice surface and resultant loss of business         $   1,200
Losses during closure                              $   6,600
Losses after closure due to business interruption
and necessity of re-establishing clientele         $   9,400

Plaintiff also urges that interest should be awarded on the amount of general damages from October 17, 1963, the date repairs were completed.

We will discuss the general damages, consequential damages, and interest issues separately.

### General Damages

We agree that plaintiff's recovery is properly based upon the full cost of tearing out the faulty ice sheet and base and installing the properly designed system. The original contract provided that defendant would install:

(a) Complete refrigeration cycle serviced by a 75 HP compressor. *System to be complete per service intended.*

(b) Complete condensing water system with cooling tower sized for maximum summer design for this area.

(c) Complete brine system utilizing plastic piping *to adequately maintain the ice sheet.* (70′ x 146′). (Italics ours.)

The following items of labor and materials were to be furnished by others than defendant:

(a) Base floor, pipe trench, equipment room and general construction including all building construction.

(b) Electrical and control wiring.

(c) Water and drains to area of cooling tower.

■ The evidence shows that defendant designed the base upon which the ice sheet rested, and that the base was an inseparable part of the refrigeration system. Where a person holds himself out as qualified to furnish, and does furnish, specifications and plans for a construction project, he thereby impliedly warrants their sufficiency for the purpose in view. See *Hoye v. Century Builders, Inc.*, 52 Wn.2d 830, 329 P.2d 474 (1958).

The trial court erred in the measure of damages it used and in failing to find that defendant made warranties, implied in law if not express, that it would construct an ice sheet upon a base designed by it, which would reasonably function as an ice skating arena. See *Hoye, supra,* at 833.

■ The trial court reasoned that plaintiff received something more than he originally bargained for, and therefore required him to absorb the additional cost of making the structure a workable skating arena. We believe this to be incorrect. The expenditures for the modifications were necessary to give plaintiff what he contracted to receive in the first place, namely, a usable ice rink at a fixed price. The modified structure was no more elaborate than would have had to be provided in the first instance if plaintiff was to have a usable ice rink on that site. The more expensive system, resulting from the modifications, accomplished only what defendant promised the original less expensive system would do. The cost of the error must be borne by the miscalculating "seller" who represented itself as an expert, rather than by the innocent "buyer" who relied upon the representations.

Neither party conducted soil tests prior to the original construction to ascertain what type of base and ice system would be adequate on this site. The responsibility for these tests lay with defendant, who had designed commercial ice arenas in the past. Plaintiff had no experience in the matter; defendant knew of plaintiff's inexperience, and it was

not shown that plaintiff should have known that soil conditions would make this vital difference.

■ The purpose of money damages in contract cases is to place the injured party in as good a position as if he had received full performance. *Baldwin v. Alberti*, 58 Wn.2d 243, 245, 362 P.2d 258 (1961). The applicable rule also appears in 1 Restatement of Contracts § 346 (1932) at 573:

> For defective or unfinished construction he [the injured party] can get judgment for . . .
>
> (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste;
> . . . .

Because the modification of the ice rink and base involved major demolition and reconstruction, we must determine whether plaintiff is entitled to full cost thereof, or whether the "unreasonable economic waste" rule limits him to some other measure of damages. *Baldwin v. Alberti, supra.* Professor Corbin writes as follows:

> This treatise supports the rule that the damages should be measured in the same way whether the breach be large or small; it should be determined by the cost of completion (the cost of curing the defects) except in a case in which actual completion (the actual curing of the defects) would cause unreasonable economic waste. In the latter case the damages should be the difference between the value of full performance as promised and the value of the defective performance actually rendered. Any reasonable doubt as to whether curing defects would cause such economic waste should be resolved against the contractor guilty of the breach; and on him should be put the burden of proof if there is dispute on the issue. It is true that the phrase "unreasonable economic waste" is no more definite and certain in its meaning and application than is the phrase "substantial performance." It too raises a question of fact. Whether the "economic waste" involved in any specific tearing down and rebuilding is "unreasonable" cannot be resolved by the application of any rule of law; prevailing practices and opinions (the mores) of men, involving their emotions as well as reason and logic, must be taken into account. 5 A. Corbin, Contracts § 1089 (1964) at 491. *See also* § 1090.

Although the cost of reconstruction was great, we cannot find that unreasonable economic waste was involved. The modifications were necessary, not only to provide a usable ice sheet, but also to protect the very foundations of the building. No other remedy was feasible. Neither party has urged application of the "unreasonable economic waste" rule of damages as applied in *Odgers v. Held,* 58 Wn.2d 247, 362 P.2d 261 (1961).

### CONSEQUENTIAL DAMAGES

Plaintiff and defendant each presented testimony of accountants relating to losses during the period the chalet was closed for repair, the losses occasioned by the condition of the ice prior to closure, and the losses during the period required to re-establish the clientele of the business. The testimony was at variance as between a gross income method of comparison and a net income method of comparison. The record is replete with divergent and complex testimony as to accounting methods. It appears that many of plaintiff's book entries were made for tax purposes and are unrelated to actual loss.

Plaintiff complains that the trial judge ignored the testimony of its accountant; that defendant's accountant admitted to several omissions in his computations; and that $2,500 consequential damages as determined by the court is without basis in the testimony. However, we note that the figure used by the trial court is very close to the amount as testified by the defendant's accountant. Although we might well agree with plaintiff's accountant, the trial court had the right to weigh the evidence and we cannot say that there is no substantial evidence to support the finding of $2,500 consequential damages.

■ We have held that recovery will not be denied because the amount of damages is incapable of exact ascertainment, if the evidence is sufficient to afford a reasonable basis for estimating the loss. *Hartman v. Anderson,* 49 Wn.2d 154, 160, 298 P.2d 1103 (1956). The evidence was sufficient to afford a reasonable basis for estimating the

loss, not only for the period the business was closed, but also for the periods preceding and succeeding the closure.

## INTEREST

Plaintiff asks for interest on the judgment for general damages from October 17, 1963, the date repairs were completed.[1]

■ ■ The rule in Washington is that interest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion. *See, Mall Tool Co. v. Far West Equip. Co.*, 45 Wn.2d 158, 273 P.2d 652 (1954); *Valley Land Office, Inc. v. O'Grady*, 72 Wn.2d 247, 432 P.2d 850 (1967). Professor McCormick has defined a "liquidated" claim as one where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion. C. McCormick, Damages (Hornbook Series) § 54 (1935). McCormick explains the application of this definition as follows:

> Little or no difficulty is encountered by the courts, except when restrained by statute, in allowing interest as damages for the breach of an obligation to pay a sum of money *whose exact amount is fixed and known*. Such an amount is termed a liquidated sum. Interest, as a rule, is payable for the detention of such a liquidated sum whether the duty to pay springs from a promise, or is one which is imposed by law apart from contract. This has been based upon the view that one who has had the use of money owing to another should in justice make compensation for its wrongful detention. . . .
>
> . . . Doubtless all courts would agree that a specific

---

[1]Plaintiff's assignment of error No. 7 asks for interest on the amount of $36,189.71 from August 1, 1963, the date of closure of the business. This seems to have been an error, for later in his brief plaintiff argues that "[T]he repair contracts were all let and the sums due thereon fully matured, not later than October 17, 1963, the date the repairs were completed and the business reopened."

sum of money named in and covenanted to be paid by an express contract, where the liability to pay the principal sum is undisputed, is a "liquidated" sum. Such admitted claims rarely give rise to any controversy over interest. Is the claim for such a sum still a "liquidated" demand, where the defendant denies all liability under the contract, or disputes liability for certain items and admits others? *It would seem that the existence of a dispute over the whole or part of the claim should not change the character of the claim from one for a liquidated, to one for an unliquidated, sum, and this conclusion finds support in the cases. . . .* The same question, of course, arises in connection with any claims, whether resting upon contract, tort, or quasi contract, which have for their basis allegations that money has actually been received or dealt with under such circumstances that a definite sum is due to the plaintiff. In these cases also the sum is still "liquidated" according to what is believed to be the better view, although the sum is not fixed by agreement and although the facts upon which the claim is based may be disputed, and even though the adversary successfully challenges the amount and succeeds in reducing it.

*Under this view, only those claims would be termed "unliquidated" where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed.* If this be so, a claim for the full amount of a note for $1,000 is "liquidated" though the defendant claims, and the evidence is in dispute on such defense, that he has paid half this sum. So also a claim for $1,000 alleged to have been in small amounts at different times embezzled by a bank cashier should be considered "liquidated," though the fact and amount of each separate taking is disputed. *In short, it is the character of the claim and not of the defense that is determinative of the question whether an amount of money sued for is a "liquidated sum."*

*It follows from the foregoing that, where the amount sued for may be arrived at by a process of measurement or computation from the data given by the proof, without any reliance upon opinion or discretion after the concrete*

*facts have been determined, the amount is liquidated and will bear interest.* (Italics ours.)

To the same effect is the opinion in *Laycock v. Parker,* 103 Wis. 161, 79 N.W. 327 (1899), quoted extensively in 5 A. Corbin, Contracts § 1046 n.69 (1964):

> "It may be safely said that the tendency has been in favor of allowing interest rather than against it, and that the degree of certainty or ease with which the approximate amount can be ascertained has grown less and less stringent. . . .
>
> "The true principle, which is based on the sense of justice in the business community and on our statute, is that he who retains money which he ought to pay to another should be charged interest upon it. *The difficulty is that it cannot well be said one ought to pay money, unless he can ascertain how much he ought to pay with reasonable exactness. Mere difference of opinion as to amount is, however, no more a reason to excuse him from interest than difference of opinion whether he legally ought to pay at all, which has never been held an excuse.*" (Italics ours.)

As to the time from which interest as damages is computed, McCormick, *supra,* at § 58, states:

> While obviously contractual interest is often agreed to be paid before the maturity of the principal debt, interest as damages can be awarded only for default in paying money when due, or delay in making compensation for some tort or breach of contract or breach of some other obligation. Necessarily, therefore, it can be computed for no period earlier than such default or breach, and, *when the principal amount due by way of debt or compensation is sufficiently certain under the standards discussed in previous sections, the time when it should have been paid is the time from which interest will be computed.* (Italics ours.)

As we have already held, defendant was obligated to compensate plaintiff for the cost of the modifications necessary to give plaintiff what he contracted to receive, namely, a usable ice rink. As argued by plaintiff, "the repair contracts were all let and the sums due thereon fully matured not later than October 17, 1963, the date the re-

pairs were completed and the business reopened." Thus, on this date evidence was available which furnished data making possible the computation of the cost of repairs with exactness and without reliance on opinion or discretion. At no time after this date does it appear that the parties seriously disputed either the necessity for the modifications or the costs involved. In fact, defendant's counsel during the trial stated the following:

*I don't believe we are disputing the actual amount that it cost to correct this.* We are not agreeing that that's necessarily the measure of damages. *But there is no dispute as to the amount that was expended to correct the situation. We'll stipulate as to that particular amount.* (Italics ours.)

Rather, the dispute was: (1) whether part or all of these costs should be borne by plaintiff or by defendant; and (2) if by defendant, then whether liability should be based on tort or on contract theory. But as we have already said, the existence of a dispute over part or all of a claim does not change the claim from a liquidated to an unliquidated one. It is the character of the claim and not of the defense that determines the question. McCormick, *supra,* at 215-216. We therefore hold that plaintiff's claim for general damages is for a liquidated sum on which interest should be allowed from the date the repairs were completed.

The judgment of the trial court is reversed and the case remanded with instructions that judgment be entered in favor of the plaintiff in the sum of $38,689.71, with interest on $36,189.71 thereof from October 17, 1963.

FINLEY, C. J., WEAVER and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.