[No. 6758-1-III. Division Three. July 1, 1986.]

LAMPSON UNIVERSAL RIGGING, INC., *Respondent,* v. WASHINGTON PUBLIC POWER SUPPLY SYSTEM, *Appellant.*

238

*Ray R. Whitlow,* for appellant.

*Diehl R. Rettig, James E. Hurson,* and *Raekes, Rettig, Osborne, Forgette & O'Donnell,* for respondent.

MUNSON, J.—Washington Public Power Supply System (WPPSS) appeals a partial summary judgment in favor of Lampson Universal Rigging, Inc. It contends: (1) the court erred in conducting an evidentiary hearing prior to ruling on the parties' summary judgment motions; (2) Lampson was only entitled to its reasonable costs plus profits under the "termination for convenience" clause in the parties' contract; and (3) Lampson was not entitled to prejudgment interest because the claim was not liquidated. We affirm.

On April 17, 1978, WPPSS and Lampson entered into a contract concerning construction of nuclear power plants 1 and 4. Lampson was to provide equipment, labor, and materials necessary to install two "polar cranes" for units 1 and 4. Thereafter, Lampson was to use the polar cranes to erect and set Nuclear Steam Supply Systems (NSSS) components inside the reactor containment buildings.

Because of substantial delays in work on another contract, WPPSS requested Lampson to submit a proposal for the availability of its transi–lift crane and other equipment for installation of NSSS components from outside the containment buildings. This case concerns only the transi–lift crane, the world's largest mobile crane.

After extensive negotiations, the parties agreed to a modification of their contract. Instead of using the polar cranes to erect and set the NSSS components, Lampson would make its transi–lift crane available for this purpose. In addition, the crane was to be made available for lifting and setting ground assembled dome liners for each containment building and for unlimited use by WPPSS at no additional charge through December 31, 1981, except for $1,900 per day for operational expenses.

This modification added $3,749,070 to the original contract price, approximately 90 percent of which pertained to the long term commitment of the crane. At an additional fixed monthly charge, WPPSS had the option of extending the modification contract beyond December 31, 1981, if notice was given 6 months prior to that date.

On June 30, 1981, WPPSS exercised this option. On July 28, WPPSS notified Lampson of a partial suspension of work and instructed it to secure and store its major equipment, including the crane, on site. On September 2, Lampson was instructed to demobilize all equipment previously held in "standby," except the crane which was to remain available. On October 27, WPPSS's managing contractor, Bechtel Power Corporation, requested Lampson to submit cost information in order that a decision could be reached "as to whether [its contract with WPPSS] should be continued . . ." After Lampson complied with this request, Bechtel advised Lampson on November 5 that the crane "is released from the project effective November 1, 1981," and "monthly availability charges cease as of October 31, 1981."

On November 6, Lampson sought clarification from Bechtel since it did not believe this was in conformity with the understanding reached with WPPSS. Lampson believed

monthly charges for the crane were to continue until Bechtel and WPPSS reached a decision on its proposals submitted to Bechtel. On November 17, Bechtel advised Lampson "it continues to be Bechtel's intention to analyze promptly [Lampson's] proposal and work with [WPPSS] to reach an expeditious resolution either to suspend or terminate" the contract.

On January 22, 1982, Lampson and other contractors were advised by WPPSS that resolutions terminating the projects had been passed that day by its executive board and board of directors, and this decision would be implemented by the managing director over the next several months. On May 24, WPPSS gave Lampson formal notice of termination for convenience. Termination was effective "upon the receipt of this letter"; Lampson was also requested to submit a claim, including all termination costs allowed under the contract. Lampson did this; its claim was rejected; this action followed.

After extensive discovery, both parties filed motions for summary judgment. The trial court called for an evidentiary hearing to determine the nature of the parties' contract to enable the court to properly apply the "termination for convenience" clause which provides, in part:

> Owner may by written notice terminate this Contract at any time in whole or in part, without cause, and, except where determination is due to Contractor's default, Owner shall pay Contractor *that portion of the Contract price corresponding to Work completed* to Owner's satisfaction together with costs necessarily incurred by Contractor in terminating the remaining portion of Work, less any payments made before termination.
>
> . . .
>
> In no event shall Owner pay Contractor amounts aggregating in excess of the Contract Price.

(Italics ours.) Lampson claimed the parties' agreement, after being modified, was for the availability of the crane; WPPSS claimed the contract was the performance of specified lifts.

The record indicates neither party objected to the

requested evidentiary hearing; both presented evidence in support of their respective positions over a period of time encompassing 6 trial days. On July 5, 1984, the trial court filed its memorandum decision, concluding the parties' agreement was for the availability of the transi– lift crane. On September 13, the court entered an order, granting Lampson's motion for partial summary judgment in accordance with its memorandum decision and awarding Lampson a net amount of $667,807.71 as due under the contract through December 31, 1981, while denying WPPSS's similar motion. This appeal followed.[1]

First, WPPSS contends the trial court erred in conducting an evidentiary hearing prior to ruling on the parties' motions for summary judgment. We disagree. When CR 56(d) and CR 42(b) are considered together, it is clear the procedure followed by the court was proper. CR 56(d) provides:

> **Case Not Fully Adjudicated on Motion.** If on motion under the rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

CR 42(b) states:

> **Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross claim, counterclaim, or

---

[1] On November 26, 1984, our commissioner entered a ruling the partial summary judgment was an appealable decision.

third party claim, or of any separate issue or of any number of claims, cross claims, counterclaims, third party claims, or issues, always preserving inviolate the right of trial by jury.

After reviewing the motions, the court concluded a hearing was necessary to determine the nature of the parties' intent at the time they entered into the modification agreement. The court also recognized this issue was determinative of the summary judgment motions. A similar procedure was employed in *North Cent. Airlines, Inc. v. Continental Oil Co.,* 574 F.2d 582, 586–87 (D.C. Cir. 1978):

> In the usual case, it is the role of this court upon an appeal from an order granting summary judgment to determine whether there is any genuine issue of material fact underlying the adjudication, and, if not, whether the substantive law was correctly applied. *Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 114, 479 F.2d 201, 206 (1973). The proceedings in this case, however, do not lend themselves to ready application of the general rule. Here, the district court ordered a separate trial of the issue of whether the price bulletins for exempt oil constituted "posted prices," as that term was used in the contract. Then, after a trial on this separate issue, the court decided, in light of its findings on that issue, that no material issue of fact remained in the case and that summary judgment was appropriate.
>
> Upon review of the result reached in this "hybrid" proceeding, it is our view that the validity of the court's findings on the factual issue which was the subject of the separated trial should be considered first. . . . Such an approach is the most efficacious in this case, since if we find that the court's findings on the separate issue are clearly erroneous, then *a fortiori* the grant of summary judgment would be improper, as that judgment hinged on the validity of the factual findings. If we should affirm the court's factual findings, the task of testing the summary judgment by the well–settled principle referred to above would remain.

(Footnotes omitted.)

The court continued, at 587 n.12:

> We note that bifurcated proceedings are not always appropriate, in that such division in certain cases might

complicate rather than simplify the issues, particularly upon review. Yet we do not perceive a substantial objection in appellant's criticism of this particular method of bifurcation.

. . . The separate issue which the court addressed here involved the most critical question in the litigation and was a very appropriate subject for bifurcated consideration.

Further, neither prior to nor during this hearing was an objection raised to this procedure; therefore, the challenge to the procedure employed has not been preserved for appeal. RAP 2.5(b). There is substantial evidence supporting the trial court's determination the contract was for the availability of equipment. *See Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719–20, 638 P.2d 1231 (1982).

Second, WPPSS argues the court erred in awarding Lampson the contract price rather than its reasonable costs plus profits for work performed. We disagree. The evidentiary hearing resolved any issue which may have existed as to the nature of the parties' agreement. The contract was for the availability of the crane, not the performance of specific lifts. The "termination for convenience" clause provides the contractor is entitled to the contract price corresponding to work completed at the time of termination. Since notice of termination was not given until after December 31, 1981, Lampson was entitled to the contract price through that date, less "unexpended labor, unexpended consumables and miscellaneous equipment standby time" as determined by the court.

■ Third, WPPSS contends the court erred in awarding Lampson prejudgment interest. We disagree. The amount due was liquidated. *Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 32–34, 442 P.2d 621 (1968). The amount of credits to be applied against the contract price to arrive at the amount due Lampson was not disputed by WPPSS until the subsequent trial when its second counsel raised the issue. Thus, since the amount due was calculable from the undisputed figures provided the court on summary judgment, Lampson was entitled to prejudgment interest. *Prier,*

at 32–34.

Summary judgment is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court October 7, 1986.