IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WINDERMERE REAL ESTATE/EAST, INC., a Washington corporation, | No. 84977-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SANDRA L. FORMAN, an unmarried person, as her separate estate, KENNETH WOOLCOTT and JANE DOE WOOLCOTT, husband and wife, TODD ANSON and JANE DOE ANSON, husband and wife, TIM O'KEEFE and JANE DOE O'KEEFE, husband and wife, JASON WOOD and JANE DOE WOOD, husband and wife, and UMBRELLA DEVELOPMENT LLC, a Delaware limited liability company. | |
| Respondents. | |

COBURN, J. — Following a failed commercial real estate transaction, Windermere Real Estate/East Inc. (Windermere), the broker managing the original sale, sued the seller of the property, Sandra Forman, and the new buyer, Umbrella Development LLC as well as Umbrella's individual owners (collectively referred to as Umbrella). Windermere originally sought from Forman, under the theories of breach of contract, unjust enrichment and promissory estoppel, its commission under its purchase and sale agreement (PSA) with the original buyers. It later added a forfeiture claim for return of its portion of the earnest money plus prejudgment interest. Windermere dismissed all

but its forfeiture claim, which it was awarded via summary judgment. The trial court awarded Windermere an undisputed $50,000, half of the earnest money deposit, but denied its request for prejudgment interest. The court, without addressing Windermere's objections, also granted all of Forman's attorneys' fees with an offset of the $50,000 owed to Windermere. The court limited Windermere's attorneys' fees to $50.

The trial court granted Umbrella's summary judgment motion dismissing Windermere's tortious interference claim because it was barred by the statute of limitations. The court granted Umbrella's attorneys' fees after Umbrella requested fees based on an unrelated signed release of claims and indemnity agreement that was not entered into by Windermere. We reverse the court's denial of Windermere's request for prejudgment interest and remand for the trial court to reconsider both Forman's and Windermere's attorneys' fees in light of this ruling as well the need to address on the record Windermere's objections. Because, based on this record, it is unclear if Windermere prevailed on all major issues on appeal as between it and Forman, we direct the trial court on remand to consider Windermere's appellate attorneys' fees after the court revisits the award of attorneys' fees below. We reverse attorneys' fees awarded to Umbrella because no tenable basis existed to award such fees and also deny Windermere's request for attorneys' fees on appeal as to Umbrella for the same reason.

FACTS

Sandra Forman owned a commercial property in Bellevue and decided to sell it. On July 26, 2016, Forman entered into a purchase and sale agreement to sell the

2

property to Bellevue Pacific Properties Group (BPPG). Forman was not represented by a broker in the transaction. BPPG employed Windermere Real Estate/East Inc. (Windermere) as the "Selling Firm" in the agreement, with Brooks Beaupain, a Windermere agent, listed as the selling broker. Beaupain and two others formed BPPG.

BPPG agreed to pay a $100,000 earnest money deposit for the sale. Section 26 of the PSA addresses "seller's acceptance and brokerage agreement" and provides in relevant part

> Seller agrees to sell the Property on the terms and conditions herein, and further agrees to pay a commission in a total amount computed in accordance with the listing or commission agreement. If there is no written listing or commission agreement Seller agrees to pay a commission of 2.500% of the sales price . . . The commission shall be apportioned between Listing Firm and Selling Firm as specified in the listing or any co-brokerage agreement. If there is no listing or written co-brokerage agreement, then Listing Firm shall pay to Selling Firm a commission of 2.500% of the sales price . . . Seller assigns to Listing Firm and Selling Firm a portion of the sales proceeds equal to the commission. If the earnest money is retained as liquidated damages, any costs advanced or committed by Listing Firm or Selling Firm for Buyer or Seller shall be reimbursed or paid therefrom, and the balance shall be paid one-half to Seller and one-half to Listing Firm and Selling Firm according to the listing agreement and any co-brokerage agreement. In any action by Listing Firm or Selling Firm to enforce this Section, the prevailing party is entitled to reasonable attorneys' fees and expenses.

BPPG brought in two investors, including Kenneth Woolcott, to purchase the Forman property. Woolcott contributed the $100,000 earnest money.

Around this time Beaupain hoped to join One Pacific Sports (OPS), which was owned by Woolcott and another BPPG partner. In August 2017, Beaupain signed a "RELEASE AND WAIVER OF ALL CLAIMS, COVENANT TO NOT SUE AND INDEMNITY AGREEMENT" (Release). The release provides

> FOR AND IN CONSIDERATION of being considered for an offering of units in One Pacific Sports, the undersigned ("the Releasor") does

hereby fully release and discharge One Pacific Sports, and its subsidiaries and affiliates such as but not limited to Bellevue Pacific Properties Group as well as KENNETH J. WOOLCOTT, Six Degrees Capital, LLC, Six Degrees Capital Development, LLC, JAMES JENSEN and their respective agents, employees, members, representatives, executors, administrators, attorneys and insurers ("Releasees"), from and against any and all claims, suits, demands and/or liabilities, of whatever kind or nature, and in any way connected with or arising out of Releasor's past and/or future business relationships with said Releasees.

. . . .

The Releasor hereby agrees to reimburse Releasees for any and all costs and attorneys' fees that may be incurred in protecting their rights under this Release.

By June 2018, BPPG still had not closed on the PSA. Beaupain and other business associates argued about whether the commission under the PSA should be divided or whether Beaupain should retain the entire sum. Meanwhile, Woolcott developed a back-up offer through his new partnership entity called Umbrella Development LLC, comprised of associates of Beaupain. Instead of closing the sale to BPPG, Forman sold to Umbrella in July.

Windermere, acting at the direction of Beaupain, sued Forman, alleging that Windermere was owed the 2.5 percent commission, a sum of $376,250 from Forman, asserting the theories of breach of contract, unjust enrichment, and promissory estoppel. The initial complaint did not include a claim for half of the earnest money deposit as provided for under Section 26 of the PSA.

At a later deposition, Windermere asked Forman about the earnest money forfeiture. Forman readily acknowledged that Windermere was entitled to one-half of the earnest money, amounting to $50,000. Windermere subsequently filed an amended complaint adding a claim for the earnest money forfeiture. In cross motions for

summary judgment, Windermere asserted the $50,000 earnest money forfeiture claim in a footnote. In its order on Windermere's motion for summary judgment, the trial court found that it was undisputed that Forman had retained the earnest money after the sale did not close and had breached the contract by not returning the $50,000 to Windermere. The trial court ruled that there remained genuine issues of material fact precluding summary judgment as to Windermere's claims for the commission under Section 26 of the PSA at that time.

Windermere later filed a second amended complaint adding Umbrella. In the amended complaint, Windermere retained its claim for breach of contract regarding the forfeiture claim against Forman, as well as its claims for unjust enrichment and promissory estoppel regarding the commission under Section 26. Windermere added a claim of tortious interference with business relations against Umbrella defendants.

The court subsequently granted Umbrella's motion for summary judgment on the basis that the statute of limitation had lapsed before Windermere filed suit. Windermere dismissed its remaining claims against Forman, leaving only the forfeiture claim for which it had already prevailed at summary judgment.

All parties requested attorneys' fees. The matters were heavily litigated.

Forman moved for an award of attorneys' fees on the basis that she had successfully defended against Windermere's claims which attempted to enforce the payment of commission under the PSA. Windermere objected to Forman's attorneys' fees arguing that they should be segregated by claims and that they included unnecessary work defending Umbrella after Forman's claims were resolved. Windermere moved for $64,570.76 in attorneys' fees and costs to be paid by Forman on

the basis that it had been a prevailing party because the court awarded it one-half of the earned money deposit under the PSA. Windermere also requested $26,547.94 in prejudgment interest on the award of the $50,000 forfeiture claim.

The court denied Windermere's request for prejudgment interest. Observing that Windermere did not segregate its attorneys' fees request associated with the forfeiture claim, the trial court awarded Windermere $50 in attorneys' fees for the time spent preparing that claim.[1] The trial court found that Forman was the prevailing party.[2] The court denied Windermere's request for pre-judgment interest, awarded Forman the full $152,974.95 in attorneys' fees and costs requested, but offset the amount with the $50,000 owed to Windermere. The court found that Forman's counsel submitted declarations establishing the "reasonable costs and fees incurred" and that the "affidavit established that duplicative and inefficient work had been removed prior to entering the total."

Umbrella also moved for an award of attorneys' fees, arguing that Windermere's litigation was directed by Beaupain, who had signed a release granting attorneys' fees to Umbrella in the event of litigation. Windermere objected, contending that it was not a party to the release and Beaupain had not signed the release as a representative or agent of Windermere. The trial court granted Umbrella's motion and ordered

---

[1] The trial court found Windermere exerted "*de minimis*" work on this claim. Windermere amended its complaint to add the forfeiture claim after Forman agreed in a deposition that she owed Windermere one-half of the earnest money deposit. The only reference to that claim in Windermere's motion for summary judgment was contained in a footnote.

[2] Windermere also argued that it was the prevailing party because it had been awarded one half of the earnest money deposit provided for in the PSA. Windermere does not maintain this argument on appeal.

Windermere to pay attorneys' fees and costs totaling $30,687.74 as requested without making any findings.

Windermere appeals the superior court's award and denial of attorneys' fees as well as its denial of Windermere's prejudgment interest.

DISCUSSION

Forman argues as an initial matter that Windermere's arguments are precluded because it failed to assign error to any of the court's findings of fact or "adequately" assign error to any conclusions of law supporting the award of reasonable fees and costs to Forman and award of reasonable fees to Windermere. At the same time, Forman acknowledges that "Windermere challenges certain of the order's conclusions of law in the body of its briefing, but it does not challenge the findings of fact or supply argument or authority relating to those findings of fact."

RAP 10.3(a)(4) requires that a party make "[a] separate concise statement of each error a party contends was made by the trial court" in its brief submitted to this court. The rule further requires that "a separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number." RAP 10.3(g). This court "will only review a claimed error which is included in the assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). Unchallenged findings are treated as verities on appeal. Zunino v. Rajewski, 140 Wn. App. 215, 220, 165 P.3d 57 (2007), overruled in part on other grounds by Hanna v. Margitan, 193 Wn. App. 596, 373 P.3d 300 (2016).

However, this court may waive technical violations of rules, including the rules requiring an appellant to assign error to findings of fact, when the opening brief makes

the challenges clear. Forbes v. Am. Bldg. Maint. Co. W., 148 Wn. App. 273, 291, 198 P.3d 1042, aff'd in part and rev'd in part, 170 Wn.2d 157, 240 P.3d 790 (2009). While it is true that Windermere does not assign error to any of the court's findings of fact, Windermere does sufficiently identify how it claims the trial court erred in its assignments of error and present argument to allow review. While we treat any unchallenged finding of fact as a verity on appeal, the lack of challenged findings of fact does not preclude review.

### Prejudgment Interest

Windermere contends that the trial court erred in failing to award it prejudgment interest on the funds owed by Forman. We agree.

The purpose of prejudgment interest is to compensate the plaintiff for the loss of the ability to use the money to which it was entitled. McLelland v. Paxton, 11 Wn. App. 2d 181, 220, 453 P.3d 1 (2019). The law seeks to compensate the plaintiff for the value of the money representing its damages for the period of time from its loss to the date of judgment. Id. (citing Hansen v. Rothaus, 107 Wn.2d 468, 473, 730 P.2d 662 (1986)). Washington courts generally award prejudgment interest only on "liquidated" sums, which are claims that can be computed with "exactness" and the amount does not rely on opinion or discretion of the court or jury. Id. (citing Hansen, 107 Wn.2d at 472); Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 33, 442 P.2d 621 (1968). The decision whether to award prejudgment interest is reviewed for abuse of discretion. Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton, 158 Wn.2d 506, 519, 145 P.3d 371 (2006).

In this case the $50,000 award to Windermere was based on the exact amount provided for in the purchase and sale agreement, making it a liquidated sum that did not require the court's discretion to calculate.

Forman maintains that the trial court did not err because under the so-called "Mall Tool exception"[3] it was proper for the court to only calculate interest on the award after it is set off against Forman's attorneys' fees award. Forman misapplies the exception. It is true that even where a claim is liquidated and would otherwise qualify for prejudgment interest, it is proper for the trial court to deny that claim where the opposing party is awarded an amount that would offset part or all of the liquidated claim. Gemini Farms LLC v. Smith-Kem Ellensburg, Inc., 104 Wn. App. 267, 269, 16 P.3d 82 (2001) (citing Mall Tool, 45 Wn.2d at 170)). The theory behind this exception is that the party is only entitled to interest on funds it is wrongfully deprived of during the period of default, but money it owes to the opposing party is not money as to which it is deprived of the rightful use. Id. at 270. This exception, however, is a narrow one that applies only to "unliquidated sums for defective product or performance." Buckner, Inc. v. Berkey Irr. Supply, 89 Wn. App. 906, 919, 951 P.2d 338 (1998).

Windermere was entitled to the liquidated sum and prejudgment interest on that sum. Forman did not allege any counterclaim against Windermere. The award of attorneys' fees based on the PSA is not a sum for defective product or performance. The offset was not the type that fits within the narrow Mall Tool exception. The trial court abused its discretion in denying Windermere prejudgment interest on its liquidated claim.

---

[3] Mall Tool Co. v. Far West Equip. Co., 45 Wn.2d 158, 273 P.2d 652 (1954).

Forman's Attorneys' Fees

Windermere next challenges the trial court's decision to award Forman attorneys' fees based on its successful defense against both the claims arising out of the contract and claims based in equity. Windermere argues that Forman is unable to recover attorneys' fees for its defense against Windermere's claims of unjust enrichment and promissory estoppel.

Our review of an award of costs and attorneys' fees is a two-step process. Estep v. Hamilton, 148 Wn. App. 246, 259, 201 P.3d 331 (2008). We first review a trial court's legal basis for awarding attorneys' fees de novo. Cook v. Brateng, 180 Wn. App. 368, 375, 321 P.3d 1255 (2014). Trial courts may award a party attorneys' fees and costs when authorized by a contract, statute, or a recognized ground in equity. Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013). If there is authority to award costs and fees, we then review the decision to award those fees and costs under an abuse of discretion standard. Cook, 180 Wn. App. at 375. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

A prevailing party may recover attorneys' fees under a contractual fee shifting provision "only if a party brings a 'claim on the contract,' that is, only if the party seeks to recover under a specific contractual provision." Boguch v. Landover Corp.,153 Wn. App. 595, 615, 224 P.3d 795 (2009). An action is on a contract for purposes of a contractual attorneys' fee provision if the action arose out of the contract and if the contract is central to the dispute. Seattle-First Nat'l Bank v. Washington Ins. Guar.

Ass'n, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991). A claim for promissory estoppel and unjust enrichment are equitable remedies in the absence of a contract between the parties, and thus, they do not arise out of a contract. See Tradewell Group Inc. v. Mavis, 71 Wn. App. 120, 857 P.2d 1053 (1993). Washington courts have recognized various exceptions allowing an award of attorneys' fees for claims based in equity, but none of those exceptions are asserted or argued by the parties in this case. See City of Seattle v. McCready, 131 Wn.2d 266, 273-74, 931 P.2d 156 (1997).

In Tradewell, the Tradewell and Mavis stores were in negotiations with a building owner to allow Mavis to become a successor tenant to Tradewell following the liquidation of Tradewell's store. 71 Wn. App. at 123-24. Mavis ultimately signed a lease with the building and reduced its offer to Tradewell by half, an offer Tradewell rejected. Id. 124. Tradewell brought suit against Mavis and the building owner alleging breach of a binding agreement to purchase the store, promissory estoppel, and unjust enrichment based on the decreased value of Tradewell's assets, and tortious interference in Tradewell's business with the building owner. Id. The trial court granted summary judgment dismissing Tradewell's contract claim against Mavis, and ruled in favor of the defendants on the other claims, but did not award fees the building owner incurred in defending against the equitable claims. Id. at 125. The building owner appealed, but this court upheld the trial court's segregation of fees and denial of an award on the basis that "none of Tradewell's remaining claims against Wedgwood . . . ar[o]se out of the undelivered lease extension." Id. at 130.

However, in some circumstances it may not be possible for a party to segregate its attorneys' fees between work related to claims on contract and equitable claims.

11

See Ethridge v. Hwang, 105 Wn. App. 447, 452, 20 P.3d 958 (2001) (holding "the court is not required to artificially segregate time in a case, such as this one, where the claims all relate to the same fact pattern, but allege different bases for recovery" where a party sought attorneys' fees on three tort claims all relating to the same facts). In such circumstances, a trial court does not abuse its discretion in so finding when that finding is supported in the record.

Here, the PSA provides that "[i]n any action by Listing Firm and Selling Firm to enforce [Section 26], the prevailing party is entitled to reasonable attorneys' fees and expenses." Windermere sought both a breach of contract claim against Forman as well as promissory estoppel and unjust enrichment. The trial court awarded all of Forman's attorneys' fees that it requested for defending against all of Windermere's claims.

Forman contends that the trial court's findings sufficiently support the court's award. However, most of these findings relate more to why the trial court limited Windermere's request for attorneys' fees and not the reasoning of why it awarded all of Forman's attorneys' fees over Windermere's specific objections. One finding appears to address the relevant issue:

> 19. Section 26 of the Bellevue Pacific contract was central to Plaintiff's theories of Unjust Enrichment and Promissory Estoppel. These theories arose from the commission clause of Section 26. Accordingly, Ms. Forman is the prevailing party with regard to those all [sic] claims and theories Plaintiff voluntarily dismissed.

We cannot determine from this finding if the trial court did not require Forman to segregate its fees because it concluded, erroneously, that all the claims arose on the contract or if the court determined that it was not possible to segregate work performed

12

defending the contract-based claim from work performed defending the equitable claims.

The trial court noted that Windermere abandoned its breach of contract, unjust enrichment, and promissory estoppel claims before ultimately prevailing on its forfeiture claim. But the court's findings do not make clear whether it attempted to segregate some fees for work performed after the dates on which Windermere abandoned all but one of its claims.

Windermere also argues that the trial court failed to reduce the award to Forman for work that was unrelated to the "commission claims." More specifically, it cites to time entries related to Windermere's claim of tortious interference with business relations. On April 22, 2021, Windermere was granted summary judgment for its breach of contract claim related to the forfeiture of the $50,000 portion of the earnest money. Windermere subsequently dismissed the remaining claims against Forman on August 16, 2022. Yet, time entries included work performed supporting Umbrella's defense after all of Forman's claims were resolved. Specifically, Windermere argued below and on appeal that it identified a total of $38,419 in fees that were "completely unrelated" to the commission claim. This included time preparing a motion to quash a subpoena to OPS and reviewing and revising a motion in support of Umbrella's summary judgment motion.

It is true that the court found that the submitted declarations from Forman's counsel established "the reasonable costs and fees incurred" and that "duplicative and inefficient work had been removed prior to entering the total." "But to facilitate review, the findings must do more than give lip service to the word 'reasonable.' The findings

13

must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Berryman, 177 Wn. App. at 658. The record does not reflect how the trial court addressed Windermere's objections. Though the trial court is not required to conduct a detailed, "hour-by-hour analysis of each lawyer's time sheets," it must generally provide insight into its exercise of discretion. Taliesen Corp. v. Razore Land Co., 135 Wn. App. 106, 143, 144 P.3d 1185 (2006); Steele v. Lundgren, 96 Wn. App. 773, 779-82, 982 P.2d 619 (1999). Failure to make an adequate record will result in remand. Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998).

In addition to the absence of sufficient findings to allow for proper review as to the issue of segregating fees, our reversal of the trial court's denial of Windermere's prejudgment interest on its $50,000 award likely could impact the fee award to both Windermere and Forman. On remand, the trial court is directed to revisit its attorneys' fee awards to both parties and enter findings of fact and conclusions of law to support its ruling.[4]

## Umbrella Defendants' Attorneys' Fees

Windermere next challenges the court's award of attorneys' fees to Umbrella. Windermere argues that the trial court failed to explain the basis upon which it granted attorneys' fees and failed to create an adequate record to support its award.

---

[4] Because we remand for reconsideration of attorneys' fees as between Forman and Windermere, we need not address Windermere's objection that the trial court also failed to make findings of fact and conclusions of law on the lodestar elements. Mahler, 135 Wn.2d at 433. Calculation of the "lodestar" rate is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate and which complies with ethical rules for attorneys, including the general rule against charging an unreasonable fee. Berryman, 177 Wn. App. at 660. We also need not address whether the trial court erred in limiting Windermere's attorneys' fees to $50.

14

Windermere correctly points out that the trial court's order does not include the basis upon which it awarded attorneys' fees to Umbrella. The order also fails to include any findings supporting its award. However, the record establishes that Umbrella moved for attorneys' fees on the basis of the release and waiver signed by Beaupain, rather than the purchase and sale agreement underlying Forman's claims for attorneys' fees. Beaupain agreed to release and discharge OPS and its subsidiaries and Woolcott from and against any and all claims, suits, demands and/or liabilities, of whatever kind or nature, and in any way connected with or arising out of Beaupain's past and/or future business relationships with said releasees. Umbrella Development LLC is a subsidiary of OPS.

Although Beaupain was a real estate agent who worked for Windermere, he signed the release in his individual capacity in hopes of being considered for an offering of units in OPS and its subsidiaries and affiliates. Windermere is not a party to this agreement.

Umbrella argues on appeal that Beaupain was directing the litigation below through Windermere, so it is fair to award attorneys' fees to Umbrella on the basis of the release, despite the fact that Windermere was not party to the agreement. This court has previously held it is "unfair and contrary to law" to enforce an attorney fee provision against someone who was a "stranger[] to the agreement." Watkins v. Restorative Care Ctr., Inc., 66 Wn. App. 178, 194-95, 831 P.2d 1085, 1094 (1992). In Watkins, the court also found that there was no basis for the award because the premise of the underlying litigation was not the contract in question and it was "not central to the dispute." Id. at 195. Similarly, in the instant case the release is not central to the dispute.

15

Umbrella cites to no authority supporting a contrary conclusion.  Instead, Umbrella suggests for the first time on appeal that because the PSA was central to Windermere's tortious interference claim against Umbrella, under RCW 4.84.330,[5] the PSA provides a basis for awarding it attorneys' fees.  As a general rule, appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a).  We do not consider Umbrella's newly raised argument.

Because there was no basis in law or recognized ground in equity for the trial court to award attorneys' fees to Umbrella, the trial court abused its discretion in awarding Umbrella attorneys' fees.[6]

Attorneys' Fees on Appeal

Windermere, Forman, and the Umbrella defendants all request attorneys' fees on appeal under RAP 18.1 and their respective contracts.  On appeal, Windermere prevails on its claim that the trial court should have awarded prejudgment interest on its successful forfeiture claim.  However, we are unable to determine based on this record why the trial court awarded Forman all of the requested attorneys' fees over Windermere's multiple objections.  Thus, whether Windermere prevails on the issue of segregable fees on appeal is yet to be determined.

As between Windermere and Umbrella, just as there was no basis for an award of attorneys' fees to Umbrella below, there is no basis to award attorneys' fees to

---

[5] The remedial purpose behind the enactment of RCW 4.84.330 is that unilateral attorneys' fee provisions be applied bilaterally.  Herzog Alum., Inc. v. Gen. Am. Window Corp., 39 Wn. App. 188, 196-97, 692 P.2d 867 (1984).  It does not apply where a contract has no fee provision or where a contract already contains a bilateral attorneys' fee provision.  Hawk v. Branjes, 97 Wn. App. 776, 780, 986 P.2d 841 (1999).

[6] We need not address Umbrella's argument that Windermere waived any challenge to the court's determination of the reasonableness of the attorneys' fees by failing to raise such an objection below.

Windermere on appeal as against Umbrella.

## CONCLUSION

We reverse the trial court's award of attorneys' fees to all parties. We remand and direct the trial court to award prejudgment interest to Windermere on its $50,000 forfeiture claim, as well as readdress the attorneys' fees requested by Windermere and Forman. The trial court's findings and conclusions shall address the issue of segregating fees, and, accordingly, determine whether Windermere was the prevailing party[7] on appeal and should be awarded appellate attorneys' fees.

_____ Coburn, J.

WE CONCUR:

_____ Feldman, J.

_____ Chung, J.

---

[7] The issue of who is the prevailing party is a mixed question of law and fact to be reviewed under the error of law standard. Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 706, 9 P.3d 898 (2000). Analytically, resolving a mixed question of law and fact requires establishing the relevant facts, determining the applicable law, and then applying that law to the facts. Tapper v. State Emp. Sec. Dep't, 122 Wn.2d 397, 403, 858 P.2d 494 (1993). If neither party wholly prevails, then the substantially prevailing party prevails for the purposes of the fee award. Marassi v. Lau, 71 Wn. App. 912, 916, 859 P.2d 605 (1993) abrogated on other grounds by Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 200 P.3d 683 (2009). If both parties prevail on major issues, an attorneys' fee award is not appropriate. Id.