198 P.3d 1042 (2009)
Cheryl FORBES, Respondent and Cross-Appellant,
Colleen Myers, Plaintiff,
v.
AMERICAN BUILDING MAINTENANCE COMPANY WEST; ABM Janitorial Services; ABM Industries Inc., Defendants,
Mary Schultz, Appellant.
No. 25398-8-III.
Court of Appeals of Washington, Division 3.
January 8, 2009.
*1046 Mary Elizabeth Schultz, Mary Schultz Law PS, Spokane, WA, for Appellant/Cross-Respondent.
Bryce James Wilcox, Michael D. Franklin, Attorneys at Law, Spokane, WA, for Respondent/Cross-Appellant.
KULIK, A.C.J.
¶ 1 Spokane attorney Mary Schultz represented Cheryl Forbes in an employment discrimination suit against ABM Industries Inc. and American Building Maintenance Company West (collectively "ABM"). Ms. Schultz and Ms. Forbes entered into an attorney fee contingency agreement that promised Ms. Schultz 40 percent of amounts reached in settlement or 44 percent of any judgment after a trial on the merits. Ms. Forbes won a jury verdict and the judgment was affirmed on appeal to this court. Forbes v. ABM Indus., Inc., noted at 127 Wash.App. 1003, 2005 WL 914836.
¶ 2 While ABM's petition for review was pending, Ms. Forbes fired Ms. Schultz and settled with ABM for less than the trial judgment. Ms. Schultz then demanded 44 percent of the trial judgment, plus statutory prevailing party fees and costs. The trial court awarded Ms. Schultz 40 percent of the settlement amount plus appellate fees, posttrial fees, and costs. The court ordered Ms. Forbes to pay prejudgment interest of 12 percent from the date of settlement on the contingent fees.
¶ 3 Ms. Schultz appeals, contending she is entitled to 44 percent of the original judgment because her services under the contract were completed when judgment was entered after trial. She also argues that she is entitled to the statutory prevailing party fees awarded in the trial judgment. In her cross-appeal, Ms. Forbes contends (1) the trial court erred by refusing to consider ethical misconduct and breaches of fiduciary duty when setting a reasonable fee; (2) the final contingency fee agreement was unenforceable for lack of consideration; and (3) the trial court incorrectly computed the fee and interest.
¶ 4 We agree with the trial court that the contract was ambiguous on the application of the contingency fees. Reading the contract against its drafter, we further agree that Ms. Schultz is entitled to only the settlement contingency (40 percent) applied to the amount received in settlement. But we also conclude that the amount actually received in settlement was the amount stated in the satisfaction of judgment. Accordingly, we modify the trial court's order and award Ms. Schultz 40 percent of the amount stated in the satisfaction of judgment, plus the additional fees and costs determined by the trial court. We affirm the judgment as modified.

FACTS
¶ 5 Ms. Forbes sued ABM in 1999 for sex discrimination, creating a hostile work environment, *1047 and retaliation. Her action and that of another former ABM employee were joined for trial. Forbes, 127 Wash.App. 1003, 2005 WL 914836, at * 1. Because they were dissatisfied with the performance of their first attorney, the plaintiffs contacted Ms. Schultz in 2000. At that time, discovery was nearly done and the trial was scheduled to begin six months later. Little had been done to develop a theory of recovery for Ms. Forbes.
¶ 6 After the original attorney withdrew in December 2000, the plaintiffs asked Ms. Schultz to represent them. The parties' initial contract in January 2001 stated that Ms. Schultz would investigate the viability of the claims at an hourly rate. She agreed to take the case in February, but only if the clients would pay a hybrid contingency fee that included one-third of any amount reached in settlement or 40 percent of any judgment after trial, plus $100 per hour (to be deducted from any contingency fee earned) and statutory prevailing party fees. The clients would pay all costs as they were incurred. This agreement was signed on February 26, 2001. An amended version of this agreement was signed on May 17, 2001. That same day, Ms. Forbes and Ms. Schultz signed a similar fee agreement for a different employment discrimination suit against another employer.
¶ 7 Ms. Schultz and her clients discussed litigation expenses at various times from September 2001 through May 2002 when Ms. Forbes and the other plaintiff were delinquent in their payments of costs and hourly fees. As a result, the parties met on May 24, 2002, and agreed that Ms. Schultz would pay costs as they arose while the clients would remain responsible for  and make their best efforts to assist with  cost payments. Additionally, Ms. Schultz agreed to waive past defaults on the hourly fee. In return, Ms. Schultz would receive an increase in the contingency fee and would buy life insurance on her clients to secure the cash outlays. This new contract was sent to the plaintiffs in July 2002 and was edited by Ms. Schultz at their request in October and November 2002. It was executed on November 5, 2002.
¶ 8 Ms. Schultz obtained a continuance of the trial date, joined for trial American Building Maintenance Company West's parent corporation, ABM Industries Inc., wrestled with intricate and difficult discovery regarding ABM, and successfully defended against ABM's motion to sever. She was also pursuing Ms. Forbes's separate action against another employer.
¶ 9 The six-week ABM trial resulted in a verdict for Ms. Forbes of $4 million. The other plaintiff was not successful and is not involved in this appeal. Posttrial, Ms. Schultz defended against ABM's motion to vacate and motion for a new trial, and successfully pursued prejudgment interest ($270,890) and taxable consequences recovery ($759,893) for Ms. Forbes. The trial court awarded Ms. Schultz $504,737 in statutory attorney fees under RCW 49.60.030(2) and $84,378 in costs through September 23, 2003. Ms. Schultz also obtained a favorable settlement for Ms. Forbes in the separate action involving a different employer.
¶ 10 After trial, Ms. Forbes could not find employment, so Ms. Schultz hired her as office manager at Ms. Schultz's law firm. Citing stress and related health problems, Ms. Forbes resigned in mid-March 2005.
¶ 11 When ABM filed an appeal in February 2004, Ms. Schultz initially exercised her option under the contract not to undertake the appeal. Ms. Schultz arranged for Ms. Forbes to hire appellate counsel, who agreed to do the appeal for 1 percent of the verdict plus prevailing party fees. Appellate counsel withdrew just before the respondent's/cross-appellant's brief was due and Ms. Schultz rewrote the brief, timely filed it, and argued the case on appeal. This court affirmed and awarded Ms. Schultz additional attorney fees incurred after trial as well as attorney fees and costs on appeal. Forbes, 127 Wash.App. 1003, 2005 WL 914836, at *16.
¶ 12 After the appeal, the judgment was worth close to $7 million. ABM then filed a petition for review at the Washington Supreme Court. Forbes v. ABM Indus., Inc., No. 77154-5 (Wash. June 3, 2005).
¶ 13 In the months following the judgment and after it was affirmed on appeal, Ms. Schultz and Ms. Forbes could not agree on attorney fees or costs. Ms. Forbes understood *1048 the contract to state that the 44 percent judgment contingency covered fees on appeal, while Ms. Schultz argued that she was entitled to an additional two percent of the judgment: one percent to her and one percent to appellate counsel for his involvement. They also disagreed on whether the 44 percent contingency or the 40 percent contingency would apply if the case settled. Ms. Schultz began to suspect that Ms. Forbes was receiving advice from another attorney on the fee agreement and settlement. In fact, Ms. Forbes was in contact with attorneys at the Spokane law firm of Lukins & Annis during those months, especially in July and August 2005.
¶ 14 On July 26, 2005, ABM sent Ms. Schultz a settlement offer of $5 million with a request to reply, if possible, by August 2, 2005, when the board of directors would meet. The offer noted that, with taxes and an attorney contingency fee of 40 percent, Ms. Forbes would actually recover more with a settlement of $5 million than she would with a judgment that was now worth  according to ABM  around $6.2 million. Ms. Schultz responded to the offer by having an accountant assess the taxable interest and sending that information to Ms. Forbes. She also showed Ms. Forbes the benefits of counter-offering $6 million.
¶ 15 On the morning of Friday, July 29, 2005, Ms. Forbes e-mailed Ms. Schultz and directed her to reject the $5 million offer and to counter with $5.8 million. Ms. Forbes continued, "I also want to note that I disagree with your interpretation of our fee agreement and how the settlement money is to be split as you outlined in your previous e-mails." Forbes Ex. 74. Ms. Schultz responded later that morning with language that suggested she would not submit the counter offer until she and Ms. Forbes reached an agreement on distribution of the settlement;
Cheryl,
Surprising comments.
Per our contract, my fees are already earned at 44% of the judgment I received for you, plus all prevailing party fees, plus fees on appeal. You may agree to compromise the claim, but I am not prepared to compromise an already earned fee under conditions of dispute with you. The investment I have made here on your behalf is substantial.
The contract also gives me the authority to settle or compromise the claim, so long as I submit the compromise to you. Two things result. 1) Even though I am not required to obtain your agreement on the counter, I am trying to work with you on it. 2) Given your comment [in the previous e-mail], until and unless we reach some written agreement on distribution, I will require the earned 44% of the entire amount, plus prevailing party fees, from any settlement that is submitted.
You may e[-]mail me your proposal as to the fee split and percentage from any proposed counter, and if we reach agreement, I will put it in writing, you can sign, and we can send a counter.
I will refrain from forwarding any more financial assessment information or correspondence, as it appears you are addressing your own interests independently, and I will do the same.
Forbes Ex. 74.
¶ 16 The following Monday, August 1, 2005, Ms. Forbes sent an e-mail to Ms. Schultz firing her:
I instructed you to submit a counter proposal to ABM last Friday, July 29. In your responsive e-mail to me[,] you refused to do so without me meeting your conditions regarding the attorney fees. You did not submit the counter offer as requested. I am invoking my right per my contract to terminate you as my attorney. This is effective immediately.
You no longer are my attorney, nor do you represent me in this matter at this juncture. Please have no communication to ABM or anyone else on my behalf.
I'm further afraid that you have put ABM's $5 million settlement offer in jeopardy. You know that ABM wanted my answer to their offer before their Board meeting tomorrow. Your refusal to carry out my directions to you and tieing [sic] your fee to whether I accept ABM's offer has put me in a very compromising position. *1049 I'm going to accept ABM's settlement offer. I'm afraid if I don't act now, all might be lost because of your actions. I can no longer stand for you to put your interests above mine.
Forbes Ex. 76. In her faxed acceptance of the settlement offer that same day, Ms. Forbes advised ABM that Ms. Schultz was no longer her attorney and instructed ABM to direct all communication to her new attorneys at Lukins & Annis.
¶ 17 Ms. Schultz filed a notice of lien on August 2, 2005, for $2,213,545 (the 44 percent contingency fee after the trial judgment), $589,115 (prevailing party fees and costs), $92,958 plus interest (posttrial and appellate fees and costs), and interest on all the above. She filed an amended notice of lien two weeks later for a total of $3,572,754 plus 12 percent interest from August 2, 2005. Ms. Schultz then filed a motion to intervene and an intervener's motion to enforce the fee agreement.
¶ 18 On September 16, 2005, Ms. Forbes filed a satisfaction of judgment for $5,655,177 and a stipulated motion to vacate the judgment due to the settlement.[1] She filed a motion for determination of the reasonableness of attorney fees and costs on September 23, 2005. In October 2005, Ms. Schultz filed a motion for an award of fees pursuant to the Court of Appeals' decision.
¶ 19 The parties' motions were heard by the trial court in a week-long hearing in March 2006. In findings of fact and conclusions of law entered in May 2006, the trial court found that Ms. Schultz took on a "factually and legally difficult and risky"[2] case and "provided exemplary service and professional expertise ... at great risk."[3] The court also found, however, that Ms. Schultz did not have the right to state that she could make the final decision on a settlement. With regard to Ms. Forbes, the trial court found that she "engaged in suspicious conduct after the trial, up to and including and beyond the time of settlement, as evidenced by her contact with attorneys at Lukins & Annis." Clerk's Papers (CP) at 1749. Finding that both parties were experienced businesspeople, the trial court concluded that "[e]ach used [her] considerable talents, during this unfortunate and contentious time, in inappropriate ways." CP at 1750. In fact, the trial court suggested that Ms. Forbes deliberately fired her attorney to maximize her share of the generous verdict. Finally, the trial court found that "[w]hat is somewhat unusual is the history in this case of the complete breakdown and self-dealing on the part of the client, and the attorney failing to professionally respond." CP at 1751.
¶ 20 The trial court concluded that the judgment was never enforceable or executed because the case was settled and the 44 percent contingency on a judgment was not applicable. Accordingly, the trial court concluded that the contractual provision for 40 percent of the settlement applied. The court also stated that this amount was fair and reasonable, as were the additional appellate fees (minus the lodestar factor) of $61,162 and the posttrial fees of $35,377, less amounts previously paid or reduced by a small claims court decision. Finally, the trial court awarded Ms. Schultz statutory attorney fees and costs.
¶ 21 In amended findings of fact, conclusions of law, and an order filed on July 3, 2006, the trial court removed the award of statutory attorney fees and costs, but added prejudgment interest of 12 percent on the awarded contingency fee from the date of the settlement. Ms. Schultz filed a notice of appeal to this court on August 1, 2006, and Ms. Forbes filed a notice of appeal (now designated the cross-appeal) the next day.

ANALYSIS

CONTINGENCY FEE FOR SETTLEMENT AFTER JUDGMENT
¶ 22 Ms. Schultz contends she is entitled to 44 percent of the trial judgment plus the statutory prevailing party attorney fees awarded in the judgment. She argues that she had fully performed under the contract *1050 when the judgment was entered after trial. The trial court concluded, however, that the trial judgment was not executed and was not enforceable. Accordingly, the trial court concluded that the provision in the contract referencing 44 percent of "any judgment after a trial on the merits" did not apply. CP at 556.
¶ 23 The meaning of a contract provision is a mixed question of law and fact, with the intent of the parties controlling. Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wash.2d 411, 424 n. 9, 191 P.3d 866 (2008). We determine this intent by viewing the contract as a whole, its objective, the conduct of the parties, and the reasonableness of the parties' interpretations. Berg v. Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990) (quoting Stender v. Twin City Foods, Inc., 82 Wash.2d 250, 254, 510 P.2d 221 (1973)). Extrinsic evidence may be considered whether or not the contract terms are ambiguous. Id. at 669, 801 P.2d 222.
¶ 24 "[R]esolving a mixed question of law and fact requires establishing the relevant facts, determining the applicable law, and then applying that law to the facts." Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 403, 858 P.2d 494 (1993). When, as here, the trial court has weighed the evidence, we review the findings of fact for substantial evidence and then determine whether the findings support the conclusions of law and judgment. City of Tacoma v. State, 117 Wash.2d 348, 361, 816 P.2d 7 (1991); Bloor v. Fritz, 143 Wash.App. 718, 730, 180 P.3d 805 (2008). We presume the trial court's findings are adequately supported by the evidence. Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 369, 798 P.2d 799 (1990). Additionally, this court defers to the trial court's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence as well as the credibility of the witnesses. Boeing Co. v. Heidy, 147 Wash.2d 78, 87, 51 P.3d 793 (2002).
¶ 25 In this case, the trial court concluded that the contingency fee provision in the attorney fee contract did not specifically cover settlement after trial and entry of the judgment. The court also concluded that there were ambiguities and errors in the fee agreement. The relevant sections of this provision support these conclusions:
5. Contingency Fee: The Attorney's fees shall be a sum equal to 40% percent of any and each (if applicable in the event both cases are settled independently) amounts reached in settlement, and-or arbitration, and forty (44%) [sic] percent of any judgment after a trial on the merits and/or appeal by any party to the action, less payments made by the Client pursuant to the Hourly Rate provision in Paragraph 6.
Any attorney fees due and owing on the full settlement or judgment amount shall be due in a lump sum at the conclusion of the case, or as settlement is reached on each matter if settled independently.... Conclusion of the case shall be deemed to include settlement, judgment after suit, arbitration award, appeal award, or termination by Client. The Client understands that she has the right to request the Court to reduce the Attorney's fee in this matter if she believes the fee to be excessive.
CP at 556.
¶ 26 Ms. Schultz contends the contract is not ambiguous because the settlement contingency clearly relates only to settlement before a judgment is entered. She does not show, however, where the contract otherwise provides for the specific circumstances of this case.
¶ 27 As stated in the quoted provision above, attorney fees are due at the conclusion of the case, and conclusion of the case includes settlement or judgment after suit. The conclusion of the case here was by settlement, not by judgment after trial. Consequently, the right to attorney fees did not arise under the contract until the case concluded with the settlement. And the only provision in the contract related to settlement set the fees at that time as 40 percent of the amounts reached in settlement.
¶ 28 The attorney fee agreement is ambiguous on the applicable contingency when, after a successful trial and appeal, the *1051 client settles. Generally, an ambiguity in a contract is resolved against the drafter. Felton v. Menan Starch Co., 66 Wash.2d 792, 797, 405 P.2d 585 (1965). Ms. Schultz not only drafted this contract, but she amended it on more than one occasion in the course of the parties' relationship. If she had intended to provide herself a specific contingency for settlement after a trial on the merits and judgment, she could have drafted appropriate language clearly indicating that the parties agreed to that contingency. Under the actual terms of the contract, however, the evidence supports the trial court's conclusion that the settlement contingency controls.
¶ 29 At issue in Taylor v. Shigaki, 84 Wash.App. 723, 930 P.2d 340 (1997), however, was whether an attorney, who had substantially performed under a contingency agreement and was then fired before the client settled, was entitled to the contingency fee for settlement, or merely an hourly fee.
¶ 30 The parties in Taylor had a provision in the attorney fee contract providing an hourly fee for services rendered if the client discharged the attorney. Usually an attorney who is discharged before full performance under a contingency fee agreement is not entitled to the contingency fee. Id. at 728, 930 P.2d 340. Ms. Forbes and Ms. Schultz agreed to an hourly fee with similar language. Ms. Schultz was fired just before Ms. Forbes accepted the settlement offer. But Taylor noted that Washington courts recognize an exception when the attorney is discharged after substantially performing his or her duties. "This exception prevents clients from firing their attorneys immediately before the contingency occurs to avoid paying a contingency fee." Id. at 728-29, 930 P.2d 340.
¶ 31 But here, there is no dispute that Ms. Schultz had substantially performed her duties when she was fired. She was entitled to a contingency fee under the contract. See id. at 730, 930 P.2d 340. However, Taylor does not support her assertion that she was entitled to the judgment contingency rather than the settlement contingency.
¶ 32 Ms. Schultz also contends the trial court erred by refusing to award her the civil rights prevailing party fees awarded in the trial judgment. The fee agreement states that in addition to the contingency fee, Ms. Schultz is entitled to direct payment of any prevailing party attorney fees and costs awarded in a civil rights action.
¶ 33 In its first findings of fact, conclusions of law, and order in the current action for attorney fees, the trial court awarded statutory fees and costs along with the contingency fee. After Ms. Forbes's motion for reconsideration, however, the trial court removed the award of statutory fees and costs from the amended findings and conclusions.
¶ 34 Ms. Schultz characterizes the statutory fees in this action as the same statutory prevailing party fees awarded by the trial court in the original judgment. She is incorrect. The trial court here awarded her statutory fees for being the prevailing party in the attorney fee controversy, not for her work in the original civil rights claim. As stated in the trial judge's letter to the parties: "I believe that I was in error awarding statutory attorney fees and costs." CP at 2413. As discussed above, the original judgment was vacated after settlement. Consequently, Ms. Schultz's award of statutory prevailing party fees in the judgment was also vacated. The trial court did not err by failing to award her those separate fees.
¶ 35 Ms. Schultz also notes that the satisfaction of judgment shows that Ms. Forbes received a total of $5,655,176.70, yet Ms. Schultz was awarded a percentage of only $5 million. Apparently the satisfaction of judgment amount includes interest ("together with interest"). CP at 497. The amended contract states that the contingency fee is equal to 40 percent of "amount reached in settlement." CP at 556. Ms. Forbes provides no evidence that the amount she reached in settlement with ABM was anything other than the $5,655,176.70 listed in the satisfaction of judgment. Consequently, Ms. Schultz is entitled to 40 percent of $5,655,176.70 minus amounts previously paid, plus the appellate and posttrial fees and interest as awarded by the court in its July 2006 amended order. The trial court's order is so modified.

*1052 EFFECT OF ATTORNEY AND CLIENT MISCONDUCT ON ATTORNEY FEES
¶ 36 Ms. Forbes raises several issues on cross-appeal. She first contends the trial court erred by failing to consider Ms. Schultz's ethical misconduct and breaches of fiduciary duty by determining the reasonableness of the attorney fees. Ms. Forbes also challenges the trial court's conclusion that she breached the attorney fee contract.
¶ 37 At the outset, we address Ms. Schultz's motion to strike portions of Ms. Forbes's reply brief. Ms. Schultz contends pages 4 through 36 of the respondent's reply brief should be stricken because Ms. Forbes assigns error to findings by the trial court that were unchallenged in the respondent's opening brief. These findings address Ms. Forbes's "suspicious conduct"[4] with Lukins & Annis, her "certainly unwarranted"[5] firing of Ms. Schultz, and that "some would say she deliberately fired Mary Schultz to maximize [her] share of the generous verdict."[6] The motion to strike was referred to this panel in a June 9, 2008 commissioner's ruling.
¶ 38 RAP 10.3(g) requires an appellant or cross-appellant to assign error to specific findings of fact, with reference to each finding by number. This court will review only a specific assignment of error or an error clearly disclosed in an associated issue. RAP 10.3(g). And errors raised for the first time in a reply brief are generally too late. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
¶ 39 Ms. Forbes did not assign error to all of the specific findings of fact related above. She assigned error only to the trial court's conclusions of law that each party breached the contract and that Ms. Forbes was not justified in firing Ms. Schultz. In her discussion of the assignments of error, however, she did challenge the trial court's interpretation of the evidence that Ms. Forbes's contact with Lukins & Annis was suspicious.
¶ 40 This court will, in appropriate cases, waive technical violations of RAP 10.3(g) when the opening brief makes the nature of the challenge clear. Harris v. Urell, 133 Wash.App. 130, 137, 135 P.3d 530 (2006), review denied, 160 Wash.2d 1012, 161 P.3d 1026 (2007). Moreover, technical violations of the rules will not bar review when justice is to be served. Daughtry v. Jet Aeration Co., 91 Wash.2d 704, 710, 592 P.2d 631 (1979). Although Ms. Forbes's argument in the opening brief focuses on the ethical misconduct of Ms. Schultz, she also asserts that her own conduct did not constitute breach of the attorney fee agreement. Because the nature of the challenge is clear, we waive Ms. Forbes's technical violations of RAP 10.3(g) and deny Ms. Schultz's motion to strike. We, therefore, review the entirety of Ms. Forbes's contention that the trial court abused its discretion by determining the reasonableness of the attorney fees.
¶ 41 Contracts for attorney fees are continually reviewed for reasonableness throughout the relationship of the client and attorney. Holmes v. Loveless, 122 Wash. App. 470, 473, 94 P.3d 338 (2004). The factors set forth in RPC 1.5(a) are properly used by the trial court as a guideline for determining whether the fee agreement is reasonable. See, e.g., Allard v. First Interstate Bank, 112 Wash.2d 145, 149-50, 768 P.2d 998, 773 P.2d 420 (1989). These factors, which were considered by the trial court in its conclusions of law, include:
(1) The time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly and the terms of the fee agreement between the lawyer and client;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services[;]
(4) The amount involved in the matter on which legal services are rendered and the results obtained;

*1053 (5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement and of the lawyer's billing practices.
CP at 1810. A fee agreement that violates the RPC is against public policy and unenforceable. Holmes, 122 Wash.App. at 475, 94 P.3d 338. Moreover, professional misconduct may justify denying or disgorging fees. Id.
¶ 42 Ms. Forbes contends the trial court failed to examine any evidence of attorney misconduct and instead focused entirely on the factors of RPC 1.5(a). The findings and conclusions prove the contrary. Certainly the trial court carefully considered the factors of RPC 1.5, as evidenced in its findings that Ms. Forbes's case was "uncertain in theory, facts and law"[7] at the outset; that Ms. Schultz was "concerned that the amount of money, time and effort in costs could bankrupt a law firm like hers"[8]; that the material elements of the fee agreement were "reasonably and fairly disclosed" to Ms. Forbes and she was "not under undue influence"[9]; that Ms. Schultz "provided exemplary service and professional expertise and that she did so at great risk"[10]; that a 40 percent contingency fee for similarly difficult and risky litigation was customary in this locale (erroneously designated a conclusion of law); and that Ms. Schultz is "a skilled and tenacious litigator," although she "can be very contentious."[11]
¶ 43 Additionally, however, the trial court considered conduct by Ms. Schultz that "did not rise to the level of her litigation skills or professional mandate." CP at 1808. This conduct included wrongfully stating that she could make the final decision to settle without her client's involvement[12]; engaging in a "contentious and adversarial"[13] settlement discussion with Ms. Forbes, and failing "to provide the responsible, professional and dignified role that is demanded of attorneys." CP at 1808. The trial court did not specifically mention that Ms. Schultz appeared to condition the submission of a settlement counteroffer on the parties' agreement to the fee distribution. But it noted that Ms. Schultz's "positions" in the e-mail that contained the condition were not justified. CP at 1808.
¶ 44 The trial court concluded that the November 2002 amended contract between the parties was fairly reached, understood by both parties, and was reasonable under the factors of RPC 1.5(a). The evidence supports the findings of fact relied upon by the trial court to reach this conclusion.
¶ 45 The remaining question is whether professional misconduct justified denying fees to Ms. Schultz. Although the trial court found that Ms. Schultz's conduct breached the terms of the fee agreement by failing to comply with the high standards required of attorneys, the court did not conclude that this conduct was egregious enough to require departure from the attorney fee agreement. The trial court tempered its disapproval with recognition that Ms. Schultz's understandable sense of betrayal and the tensions between the parties by the time the appeal was over "successfully tempted Ms. Schultz to take or convey inappropriate positions." CP at 1808.
¶ 46 Ms. Forbes cites several cases where misconduct of an attorney justified denial of *1054 fees. For instance, in Eriks v. Denver, 118 Wash.2d 451, 462-63, 824 P.2d 1207 (1992), an attorney who represented both promoters and investors was deemed to be in breach of his fiduciary duty to the investors. Citing the trial court's inherent power to fashion judgments, the court affirmed the trial court's decision to deny fees as a reasonable way to discipline the breach of professional responsibility and to deter future misconduct. Id. at 463, 824 P.2d 1207. This principle was also expressed in Ross v. Scannell which stated that "`[w]hen an attorney is guilty of fraudulent acts or gross misconduct in violation of a statute or against public policy, the client may have a complete defense to the attorney's action for fees.'" Ross v. Scannell, 97 Wash.2d 598, 610, 647 P.2d 1004 (1982) (quoting Dailey v. Testone, 72 Wash.2d 662, 664, 435 P.2d 24 (1967)).
¶ 47 Ms. Forbes claimed Ms. Schultz's ethical misconduct included (1) successive increases to the contingency fee percentage under threats of withdrawal, (2) a claim to 88 percent of the recovery, (3) an attempt to acquire all of the rights to the settlement, and (4) refusal to submit her client's settlement request. Ms. Schultz rebutted these claims with evidence that (1) the parties agreed to the fee increases due to Ms. Forbes's inability to stay current on the costs and hourly fee, (2) she merely pointed out to Ms. Forbes that one  obviously ridiculous  interpretation of the contract was that it awarded her 88 percent of the recovery if she brought a successful appeal, and (3) she never refused to submit a counteroffer.
¶ 48 Ultimately, the trial court has the discretion to decide what impact, if any, a lawyer's misconduct will have on a claim for attorney fees. Kelly v. Foster, 62 Wash.App. 150, 156, 813 P.2d 598 (1991). And this court must defer to the trial court's decisions regarding conflicting evidence. Weyerhaeuser v. Tacoma-Pierce County Health Dep't, 123 Wash.App. 59, 65, 96 P.3d 460 (2004). The trial court found that both parties breached the agreement by self-dealing and unethical practices. It also found, however, that Ms. Schultz provided her client "exemplary service." CP at 1807. The trial court's decision is supported by the evidence and does not constitute an abuse of the court's discretion. Ms. Schultz's misconduct did not justify voiding the contract and denying her fees.

CONSIDERATION FOR THE AMENDED CONTRACT
¶ 49 Ms. Forbes next contends the November 2002 amended contract was unenforceable because it was executed without consideration. The trial court did not make a specific conclusion regarding this issue.
¶ 50 Modification of a contract by a subsequent agreement requires a meeting of the minds and consideration separate from that of the original contract. Dragt v. Dragt/DeTray, LLC, 139 Wash.App. 560, 571, 161 P.3d 473 (2007). Consideration is a bargained for act or forbearance, such as a new promise or exchange. Id. at 572, 161 P.3d 473. Generally the renegotiation of an attorney's fee after establishment of the attorney-client relationship requires particular attention and scrutiny. Ward v. Richards & Rossano, Inc., 51 Wash.App. 423, 428, 754 P.2d 120 (1988) (citing Perez v. Pappas, 98 Wash.2d 835, 841, 659 P.2d 475 (1983)). When renegotiation results in higher fees, the court may refuse to enforce the amended contract unless it is supported by new consideration. Perez, 98 Wash.2d at 841, 659 P.2d 475.
¶ 51 In Perez, the attorney renegotiated his fee upward at the time of settlement based on contingencies that the court later decided were illusory. Id. For instance, the attorney claimed that he needed to renegotiate the fee upward because he had to assume several new, additional risks justifying the increased fee. The court noted, however, that by the time of the settlement, all of these additional risks had been dealt with and were nonexistent. Id. at 841-42, 659 P.2d 475.
¶ 52 Here, the record shows that the final fee agreement between the parties  the November 2002 amended contract  was renegotiated before trial, not during settlement discussions. The trial court found that Ms. Schultz became increasingly concerned that her investment of resources into the case would bankrupt her practice. When Ms. Forbes was unable to keep up with costs and *1055 the hourly fee as agreed to in the hybrid attorney fee contract, the agreement was renegotiated to provide that Ms. Schultz would advance all costs, discontinue the hourly fee, and waive past defaults on the hourly fee. In return, the parties agreed that Ms. Schultz would receive a higher contingency percentage if she prevailed on Ms. Forbes's behalf. Ms. Schultz would also buy life insurance on her clients to secure the costs. The trial court found that Ms. Forbes, a successful business woman with litigation experience, discussed these amendments with Ms. Schultz and negotiated changes over several months before signing.
¶ 53 Although the trial court did not specifically conclude that the November 2002 amended contract was supported by valid consideration, its findings show that the parties negotiated with recognition that new circumstances required a new agreement. By signing the amended contract, Ms. Forbes was no longer in default on costs and the hourly fee, and Ms. Schultz was protected with a higher potential recovery. Valuable consideration was exchanged. The renegotiated November 2002 contract was, thus, enforceable. Pappas, 98 Wash.2d at 841-42, 659 P.2d 475; Dragt, 139 Wash.App. at 571-72, 161 P.3d 473.

COMPUTATION OF THE FEE
¶ 54 Ms. Forbes challenges the trial court's award of prejudgment interest and computation of the fees and costs. She contends prejudgment interest is not warranted and the calculations of fees and costs are not supported by the evidence.
¶ 55 I. Prejudgment interest. Prejudgment interest is allowed in civil litigation when a party to the litigation retains funds that rightfully belong to another and the amount of the funds is liquidated, meaning that the amount can be calculated with precision and without reliance on opinion or discretion. Crest Inc. v. Costco Wholesale Corp., 128 Wash.App. 760, 775, 115 P.3d 349 (2005) (quoting Mahler v. Szucs, 135 Wash.2d 398, 429, 957 P.2d 632 (1998)). Such interest is also awardable when a claim is unliquidated but is determinable by computation with reference to a fixed standard in a contract. Hadley v. Maxwell, 120 Wash.App. 137, 141-42, 84 P.3d 286 (2004) (quoting Lakes v. Vondermehden, 117 Wash.App. 212, 217, 70 P.3d 154 (2003)). The policy supporting prejudgment interest arises from the view that one who has had the use of money owed to another should in justice make compensation for its wrongful detention. Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 32, 442 P.2d 621 (1968) (quoting CHARLES T. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES, § 54 (1935)). We review an award of prejudgment interest for abuse of discretion. Crest, 128 Wash.App. at 775, 115 P.3d 349 (quoting Curtis v. Sec. Bank of Wash., 69 Wash.App. 12, 20, 847 P.2d 507 (1993)).
¶ 56 The trial court awarded Ms. Schultz prejudgment interest of 12 percent on the contingency fee from the date of settlement, minus sums previously paid under the hybrid agreement, and on the remaining costs due in the judgment summary. Ms. Forbes contends Ms. Schultz is not entitled to prejudgment interest because the amount and entitlement to attorney fees was in dispute from the time of settlement. She also asserts that she did not retain the use of the funds because she deposited a portion of her recovery under the settlement in the court registry pending the resolution of this suit.
¶ 57 The fact that a defendant believes he or she does not owe the plaintiff any money does not make a claim unliquidated. Hadley, 120 Wash.App. at 143-44, 84 P.3d 286 (quoting Colonial Imports v. Carlton N.W., Inc., 83 Wash.App. 229, 247, 921 P.2d 575 (1996)). And "a liquidated claim remains so even if the defendant is partially successful in reducing his or her share of liability." Id. at 144, 84 P.3d 286.
¶ 58 The claim here was for attorney fees under an attorney fee agreement. The amount of the claim could be calculated with precision under the terms of the contract. Although both parties disagreed on which terms of the contract applied to the claim of fees  and ultimately disagreed with the terms applied by the trial court  the claim was liquidated because it could be calculated without reliance on opinion or discretion. *1056 See Crest, 128 Wash.App. at 775, 115 P.3d 349. Even if Ms. Forbes had been successful in convincing the trial court to reduce the amount of fees based on Ms. Schultz's professional misconduct, the claim for fees remained liquidated. See Hadley, 120 Wash. App. at 144, 84 P.3d 286.
¶ 59 Ms. Forbes cites Weyerhaeuser Co. v. Commercial Union Insurance Co., 142 Wash.2d 654, 687-88, 15 P.3d 115 (2000) for the rule that an award of attorney fees is the type of discretionary claim that does not warrant prejudgment interest. But she takes this language out of context. The attorney fees in Weyerhaeuser were awarded to the prevailing party at trial and were not computed from the terms of a contract. Fees to the prevailing party in a lawsuit are reviewed for abuse of discretion. Boeing, 147 Wash.2d at 90, 51 P.3d 793. Accordingly, attorney fees to the prevailing party in a lawsuit generally do not qualify for prejudgment interest. Weyerhaeuser, 142 Wash.2d at 687-88, 15 P.3d 115. The award here, on the other hand, was calculated according to the terms of the contract and was, therefore, liquidated.
¶ 60 Although prejudgment interest on a liquidated claim ordinarily is a matter of right, a trial court has discretion to disallow that interest when justice requires it. Colonial Imports, 83 Wash.App. at 245, 921 P.2d 575. Additionally, the interest may be tolled if the defendant tendered the amount due to the plaintiff and the plaintiff refused to accept it. Richter v. Trimberger, 50 Wash.App. 780, 785, 750 P.2d 1279 (1988). By placing the amount due in the registry of the court, the defendant may also toll the interest. Crest, 128 Wash.App. at 775-76, 115 P.3d 349; Richter, 50 Wash.App. at 785, 750 P.2d 1279. The record here shows that Ms. Forbes placed almost $3.6 million in the court registry in September 2005 as a response to Ms. Schultz's amended notice of lien. Later that month, she directed the Spokane County Clerk to invest the funds in an interest-bearing account for her benefit and with her social security number on the account for tax purposes. She cannot say that she gave up all use of the funds by placing it in the court registry. And clearly Ms. Schultz was deprived of the use of the funds.
¶ 61 Under the circumstances of this case, prejudgment interest was justified because the claim was liquidated and Ms. Forbes retained funds that rightfully belonged to Ms. Schultz under the fee contract. The trial court did not abuse its discretion in awarding Ms. Schultz prejudgment interest.
¶ 62 II. Calculation of attorney fees and costs. Ms. Forbes assigns error to the trial court's calculation of the fees and costs. She challenges the evidence presented by Ms. Schultz and cites her own evidence of amounts already paid toward the fees and costs. The trial court considered the evidence from both parties. We must defer to its resolution of the conflicting testimony when the record contains sufficient evidence to support its findings. Niemann v. Vaughn Cmty. Church, 154 Wash.2d 365, 377-78, 113 P.3d 463 (2005). The designation of fees and costs due and the amount to be deducted from those fees and costs is supported by Ms. Schultz's evidence. This evidence is sufficient to support the trial court's decision.

ATTORNEY FEES ON APPEAL
¶ 63 Ms. Schultz did not request attorney fees in her appellant's brief. In the respondent's/cross-appellant's brief, Ms. Forbes included a section that states in its entirety: "Pursuant to RAP 18.1, Ms. Forbes requests that this Court award her attorneys' fees for prosecuting this appeal based upon equitable considerations. [Rogerson] Hiller Corp. v. Port of Port Angeles, 96 Wash.App. 918, 927, 982 P.2d [131 (1999) ]." Resp't's Br. at 74. This statement adequately complies with RAP 18.1(b), which requires the party to devote a section of its opening brief to the request for fees or expenses. Ms. Schultz in her response to the cross-appeal then argues that she should be reimbursed for her fees and costs under Rogerson Hiller. Her request does not comply with RAP 18.1(b) because she did not raise the issue in her opening brief.
¶ 64 In her reply to the appellant's brief, Ms. Forbes explains her equitable argument for attorney fees. She contends that *1057 she should be awarded attorney fees and costs based on Ms. Schultz's breaches of fiduciary duty, citing Allard v. First Interstate Bank, 112 Wash.2d 145, 151-52, 768 P.2d 998, 773 P.2d 420 (1989). Ms. Forbes claims that Ms. Schultz brought this litigation in bad faith. She argues that Ms. Schultz's prelitigation misconduct necessitated termination and required a reasonableness challenge to the requested fees. She also contends Ms. Schultz engaged in procedural bad faith by threatening future litigation, withholding client funds, bringing frivolous motions and then withdrawing them, and threatening to sue Lukins & Annis for tortious interference.
¶ 65 This court may award attorney fees on appeal only if authorized by contract, statute, or a recognized ground in equity. Bowles v. Dep't of Retirement Sys., 121 Wash.2d 52, 70, 847 P.2d 440 (1993) (quoting Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist., 96 Wash.2d 806, 815, 638 P.2d 1220 (1982)). Neither the contract nor a statute authorizes an award here. The equitable ground of bad faith may justify attorney fees. Rogerson Hiller, 96 Wash.App. at 927, 982 P.2d 131 (quoting In re Recall of Pearsall-Stipek, 136 Wash.2d 255, 267 & n. 6, 961 P.2d 343 (1998)).
¶ 66 The three types of bad faith recognized as warranting attorney fees include prelitigation misconduct, procedural bad faith, and substantive bad faith. Id. Prelitigation misconduct refers to obstinate conduct in bad faith that wastes private and judicial resources. Id. at 927-28, 982 P.2d 131. Procedural misconduct includes vexatious conduct during litigation and is unrelated to the merits of the case. Id. at 928, 982 P.2d 131. Substantive bad faith occurs when a party intentionally brings a frivolous claim, counterclaim, or defense for the purpose of harassment. Id. at 929, 982 P.2d 131.
¶ 67 Ms. Schultz did not engage in obstinate prelitigation conduct that wasted resources. She also did not engage in unusually vexatious conduct during litigation. Ms. Forbes seems to argue that Ms. Schultz is guilty of substantive bad faith for bringing a frivolous claim or defense. But Ms. Schultz's issues on appeal had merit; she did not engage in bad faith litigation. See Pearsall-Stipek, 136 Wash.2d at 267, 961 P.2d 343. Accordingly, we deny attorney fees on appeal.
¶ 68 In conclusion, we affirm the judgment as modified and award Ms. Schultz 40 percent of $5,655,176.70.
WE CONCUR: SWEENEY and BROWN, JJ.
NOTES
[1] The order vacating the judgment was entered on September 30, 2005.
[2] Clerk's Papers (CP) at 1740.
[3] CP at 1749.
[4] CP at 1807.
[5] CP at 1808.
[6] CP at 1809.
[7] CP at 1798.
[8] CP at 1799.
[9] CP at 1801.
[10] CP at 1807.
[11] CP at 1808.
[12] An attorney does not have authority to compromise and settle a client's rights without special authority from the client to do so. Graves v. P.J. Taggares Co., 94 Wash.2d 298, 303, 616 P.2d 1223 (1980); Grossman v. Will, 10 Wash.App. 141, 149, 516 P.2d 1063 (1973).
[13] CP at 1807.