240 P.3d 790 (2010)
Cheryl FORBES, Petitioner, and
Colleen Myers, Plaintiff,
AMERICAN BUILDING MAINTENANCE COMPANY WEST; ABM Janitorial Services; ABM Industries Inc., Defendants, and
Mary Schultz, Respondent.
No. 82950-1.
Supreme Court of Washington, En Banc.
Argued June 29, 2010.
Decided October 7, 2010.
Bryce James Wilcox, Michael D. Franklin, Attorneys at Law, Spokane, WA, Kenneth Scott Kagan, Carney Badley Spellman, Seattle, WA, for Petitioner.
Mary Elizabeth Schultz, Mary Schultz Law, P.S., Spokane, WA, for Respondent.
*791 C. JOHNSON, J.
¶ 1 This case asks us to make two determinations regarding this lengthy attorney fee dispute. We must decide whether the trial court properly awarded prejudgment interest and whether the attorney's contingency fee should have been based on the satisfaction of judgment amount rather than the settlement amount. The trial court awarded prejudgment interest and calculated the contingency fee from the settlement amount, and the Court of Appeals affirmed the award of prejudgment interest but modified the amount used to calculate the contingency fee, basing it instead on the satisfied judgment amount. We reverse the Court of Appeals on the modification, affirm the award of prejudgment interest, and reinstate the trial court's order in all other respects.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 This attorney fee dispute arose between petitioner Cheryl Forbes and her former attorney, respondent Mary Schultz. In the underlying case, Forbes brought an employment discrimination action against American Building Maintenance Company West and ABM Industries Inc. (collectively "ABM"). Unsatisfied with her original attorney's performance, Forbes asked Schultz to represent her in the action.[1]
¶ 3 On February 19, 2001, Schultz agreed to take the case, and shortly thereafter she and Forbes executed a hybrid contingency fee agreement under which Schultz would receive a contingency fee plus an hourly rate, plus prevailing party fees and any outstanding costs. The contingency fee was to be 33½ percent of any settlement amount and 40 percent of any post trial judgment. Forbes was to pay costs as they were incurred.
¶ 4 As the case proceeded, Forbes became delinquent on costs and fees. As a result, in May 2002, Forbes and Schultz orally agreed to a new fee arrangement under which Schultz would advance funds to pay for costs, and Forbes would use her best efforts to pay for costs as they accrued. Schultz also waived past defaults on the hourly fees owed. In exchange, Schultz increased her contingency fee percentages. The parties committed this new contract to writing on November 4, 2002. Under this agreement, Schultz would receive 40 percent of any settlement amount and 44 percent of any post trial or post appeal judgment.
¶ 5 After a lengthy trial, Schultz achieved a favorable jury verdict for Forbes in the amount of $4 million. This judgment, plus interest, taxable consequences, and assorted fees and costs, totaled $5,655,176.77. Clerk's Papers (CP) at 382-83.[2] Schultz then successfully defended against ABM's post trial motions and argued the case on appeal, where Forbes' judgment was affirmed.
¶ 6 After its unsuccessful appeal, ABM petitioned this court for review. While its petition was pending, ABM extended an offer to Forbes to settle for $5 million. By that time, the total value of the judgment had grown to approximately $7 million. In its offer letter, dated July 26, 2005, ABM gave no deadline but stated that, "if possible," they hoped to present a proposed settlement for board approval on August 2, 2005.
¶ 7 By the time of ABM's settlement offer, Forbes had been in contact with another law firm, Lukins & Annis, regarding her dispute of Schultz's fees. After Schultz received ABM's offer and she communicated it to Forbes, she and Forbes could not agree on a settlement strategy. They disagreed about how to proceed with the settlement negotiations, about the correct interpretation of their fee agreement, and about how the settlement money would be allocated if settlement was reached.[3] On July 29, 2005, *792 Forbes sent an e-mail to Schultz, directing her to send a counteroffer to ABM of $5.8 million. Schultz responded, suggesting that she would not submit a counteroffer until she and Forbes reached a written agreement on settlement distribution. Forbes did not respond to Schultz's further attempts to discuss the settlement offer.
¶ 8 Forbes terminated Schultz as her attorney and retained Lukins & Annis on August 1, 2005. On the same day and without further negotiation, Forbes accepted ABM's $5 million settlement offer. Schultz also received a letter from Lukins & Annis, informing her of the new representation and advising her not to contact Forbes.
¶ 9 On August 2, 2005, Schultz filed a notice of lien with the trial court, claiming an attorney's lien in the amount of $2,895,617.29. This amount included a 44 percent contingency fee based on the judgment amount, various fees and costs, and interest. She amended the lien shortly thereafter, claiming $3,572,754.33 plus 12 percent interest from and as of August 2, 2005.
¶ 10 After reaching the settlement with ABM, on September 16, 2005, Forbes filed a satisfaction of judgment with the trial court in the amount reflected in the judgment, $5,655,176.70. Pursuant to the notice of lien, ABM deposited $3,572,754.33the amount of Schultz's amended lieninto the superior court registry. ABM directed the court clerk to hold the deposited funds during the resolution of the fee dispute between Forbes and Schultz, and pursuant to RCW 36.48.090, to invest the funds in an interest-bearing trust account. Forbes later sent a letter directing the clerk to deposit the funds in an investment account at a bank of her choice.
¶ 11 In response to motions by both parties, including Forbes' motion for a determination of the reasonableness of Schultz's fees, the trial court held a nine-day hearing to determine the appropriate fees and costs to award to Schultz.[4] Observing that the judgment was neither executed nor enforceable, the trial court reasoned that Schultz's contingency fee should be based on the settlement, not the judgment amount. And noting that the fee agreement is ambiguous as to what fee should apply in this situationwhere the settlement amount is less than the judgment amount, the court concluded that 40 percent of the settlement amount of $5 million, plus fees and costs, was a fair and reasonable attorney fee. The court thus ordered the same and also ordered Forbes to pay prejudgment interest of 12 percent of the contingency fee amount.
¶ 12 Forbes and Schultz both appealed, and the Court of Appeals affirmed the judgment but modified the trial court's order. Forbes v. Am. Bldg. Maint. Co. W., 148 Wash.App. 273, 289-90, 198 P.3d 1042 (2009). The court modified the settlement amount to reflect the amount listed in the satisfaction of judgment, reasoning that Forbes did not provide any evidence that the settlement amount was anything other than the $5,655,176.70 listed in the satisfaction of judgment. The Court of Appeals thus awarded Schultz 40 percent of the satisfaction of judgment amount. The court also affirmed the trial court's award of prejudgment interest.
¶ 13 Forbes and Schultz both petitioned for review by this court. We granted Forbes's petition only as to the Court of Appeals' modification of the amount on which to base Schultz's fee and the trial court's award of prejudgment interest. We denied Schultz's petition.

ISSUES
¶ 14 (1) Whether a satisfaction of judgment amount is the appropriate basis to calculate a contingency fee.
¶ 15 (2) Whether Schultz was properly awarded prejudgment interest on the contingency fee amount, when the disputed funds were held in a court registry and invested in an interest-bearing account.

ANALYSIS

(1) Amount Used to Calculate Contingency Fee
¶ 16 Forbes argues that the Court of Appeals erred by modifying the amount it *793 used to calculate Schultz's contingency fee, thereby enlarging Schultz's total award. The court modified the settlement amount from $5 million (the amount used by the trial court to calculate the fee) to $5,655,176.70, the amount reflected in the satisfaction of judgment Forbes filed with the trial court after she settled with ABM. Forbes, 148 Wash. App. at 289-90, 198 P.3d 1042. In making this change, the court reasoned that Forbes provided no evidence that the amount reached in settlement was anything other than $5,655,176.70, an amount that the court opined must include interest.
¶ 17 The question before us is a factual one: how much did Forbes receive when she settled with ABM? The Court of Appeals' conclusionthat no evidence demonstrates that the settlement amount was $5 million is mistaken. The record supports the trial court's conclusion, and we will uphold that conclusion if sufficient evidence supports it. The record demonstrates both that ABM offered to settle for $5 million and that Forbes accepted that offer. Forbes testified that she settled the case for $5 million. The settlement agreement between Forbes and ABM states that ABM would pay Forbes $5 million in settlement. In its findings of facts, the trial court concluded the same. No evidence or testimony in the record supports any other amount. Thus, sufficient evidence exists in the record to support the trial court's conclusion that Forbes and ABM settled for $5 million.
¶ 18 In addition, the $5.6 million figure the Court of Appeals chose to use verifiably reflects the amount of trial court judgment, plus assorted fees and costs.[5] In this case, use of this figure to calculate Schultz's contingency fee is incorrect. That figure reflects the judgmentnot the settlement amount. Generally, a judgment entered in a lawsuit reflects an amount owing at that instant. What can, and often does happen after the judgment is entered may alter the amount owed, or the parties may agree to settle for some other amount. If the amount owed is not paid immediately, interest can accrue. But the judgment itself is satisfied by reference to the judgment amount as entered. This is reflected by the satisfaction of judgment in this case. The trial court correctly concluded that, after the settlement became final, the trial judgment was never executed and became unenforceable because a settlement was negotiated. Further, because a settlement resolved the case and because of ambiguities in the fee agreement, the settlement amount should be used to calculate the contingency fee. The court concluded that the 40 percent contingency fee based on the $5 million settlement was fair and reasonable. The Court of Appeals explicitly affirmed these conclusions, Forbes, 148 Wash.App. at 288, 198 P.3d 1042, and we did not accept review of the issue.
¶ 19 The Court of Appeals thereafter chose to use an incorrect figure as a base number to calculate Schultz's contingency fee. We reverse the court's modification and reinstate the trial court's order.

(2) Prejudgment Interest
¶ 20 An award of prejudgment interest is based on the principle that a party "`who retains money which he ought to pay to another should be charged interest upon it.'" Hansen v. Rothaus, 107 Wash.2d 468, 473, 730 P.2d 662 (1986) (quoting Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 34, 442 P.2d 621 (1968)). A court may award a party prejudgment interest when the claimed amount is "liquidated" or when an unliquidated claim is otherwise determinable by reference to a fixed contractual standard, without reliance on opinion or discretion. Hansen, 107 Wash.2d at 472, 730 P.2d 662. A claim is liquidated when the amount of prejudgment interest can be computed with exactness from the evidence, without reliance on opinion or discretion. The fact that an amount is *794 disputed does not render the amount unliquidated.
¶ 21 In this case, the claimed amountSchultz's contingency feeis liquidated. The Court of Appeals confirmed the trial court's approval of the 40 percent contingency fee. Both courts also agreed that the fee should be calculated from the settlement amount (though they disagreed as to what that amount is). Because we do not review the lower courts' decisions on the proper fee percentage, and because, as discussed above, the evidence establishes that the settlement amount is $5 million, the amount of prejudgment interest can be determined with exactness (40 percent of $5 million).
¶ 22 Where the claimed amount is liquidated, the rightful claimant of the funds should be compensated for the lost "use value" of the money. Hansen, 107 Wash.2d at 473, 730 P.2d 662 (quoting Mall Tool Co. v. Far W. Equip. Co., 45 Wash.2d 158, 177, 273 P.2d 652 (1954)). The Court of Appeals correctly concluded that Schultz was deprived of the use of the disputed funds and that she was thus entitled to an award of prejudgment interest.
¶ 23 The bare facts are largely undisputed. Forbes settled the case, and payment by ABM was made. ABM deposited into the court registry the amount Schultz claimed as her amended lien (44 percent of the judgment amount, plus interest and fees). ABM effectively interpleaded the funds into the court registry in order to satisfy its obligation to Forbes and to avoid entanglement in the fee dispute between Forbes and Schultz.[6] Forbes later directed the court clerk to invest that money, for her benefit, in an interest-bearing account of her choosing. The Court retained control of the funds pending resolution of this dispute. The Court of Appeals reasoned that because Schultz was deprived of use of the funds, and because Forbes directed investment of the funds "for her benefit and with her social security number on the account," Forbes therefore had use of the funds and Schultz is entitled to prejudgment interest. Forbes, 148 Wash.App. at 299, 198 P.3d 1042.
¶ 24 Despite Forbes' arguments to the contrary, ABM's placement of the disputed funds in the court registry has no bearing on whether prejudgment interest should be awarded to Schultz. By placing the funds in the registry, ABM disclaimed any right to them and so avoids any interest it might otherwise owe. But ABM's deposit has no effect on the dispute between, or the rights and obligations of, Schultz and Forbes.
¶ 25 Forbes argues that because the court held the funds, she never had control or use of the funds, and prejudgment interest is inappropriate. She also contends that under RCW 36.48.090,[7] she was entitled to request that the funds be invested and that because she does not control disbursement of the funds, she has no "use" of them. Forbes misunderstands the policies underlying prejudgment interest. First, prejudgment interest may be awarded not only when one party has improperly used the funds, but also when one party is improperly deprived of those funds. This latter situation occurred here; from the date of the trial court's judgment to the date all the funds are disbursed, Schultz has been deprived of any use or benefit of funds that are rightfully hers. Second, the fact that RCW 36.48.090 permits a litigant to direct the court clerk to invest held funds in an interest-bearing account, and to pay interest to the beneficiary, has no effect on a trial court's decision that a judgment *795 shall accrue interest until paid. Nor does that statute have any impact on the underlying dispute between the parties.
¶ 26 Therefore, because Schultz was deprived of funds rightfully hers, the trial court properly awarded prejudgment interest. We affirm the Court of Appeals.

(3) Attorney Fees
¶ 27 In her brief to the Court of Appeals, Forbes requested attorney fees on appeal. The court denied her request. Forbes argued that her award of attorney fees should be based upon equitable considerations, namely as a result of Schultz's breaches of fiduciary duty. She asserted that Schultz brought this litigation in bad faith. We have held that attorney fees may be awarded only when authorized by a contract, statute, or recognized ground in equity. Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 70, 847 P.2d 440 (1993). The equitable ground of bad faith may justify attorney fees. In re Recall of Pearsall-Stipek, 136 Wash.2d 255, 267 & n. 6, 961 P.2d 343 (1998). However, after reviewing the record and the trial court's findings, we agree with the trial court and the Court of Appeals that no equitable ground exists in this case, either at the trial or appellate levels, on which Forbes should be awarded attorney fees.

CONCLUSION
¶ 28 The Court of Appeals incorrectly modified the settlement amount to reflect the satisfaction of judgment filed by Forbes, and we reverse the court on that issue. The court correctly affirmed the trial court's award of prejudgment interest to Schultz, and we affirm the court's decision on that issue. We remand to the trial court for disbursement of the remaining funds consistent with this opinion and as determined in its original order.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] Another plaintiff, Colleen Myers, was a party to this case. She and Forbes had the same attorney at the outset of the case, and together they terminated the services of that lawyer and retained Schultz. Because Ms. Myers is not involved in this fee dispute, however, she will not be discussed as a party to the case.
[2] The total of the separate amounts listed by the court is $5,665,176.77. The court originally entered an erroneous amount under "taxable consequences," Clerk's Papers (CP) at 372; it subsequently entered a judgment nunc pro tunc in which the figure was corrected. CP at 382.
[3] Settlement discussion between Forbes and Schultz was contentious, especially with respect to which contingency percentage would apply if the case settled, 40 percent (settlement) or 44 percent (judgment). Here, the language of the fee agreement was ambiguous as to the factual scenario of reaching settlement after a judgment was obtained.
[4] The trial court entered 100 findings and conclusions at the end of the hearing.
[5] In its judgment summary, the trial court outlined all of the monetary awards Forbes was to receive. CP at 382-91. These awards, the total of which is $5,655,176.77, included the following: the principal judgment ($4 million); interest on principal judgment ($270,890); taxable consequences ($759,893); attorney fees and costs for first attorney ($35,279); attorney fees for Schultz ($504,736.89); and attorney costs for Schultz ($84,377.88). The trial court also awarded Schultz prejudgment interest, but the court did not calculate that amount or include the total in its judgment summaries.
[6] That the funds were paid into the court registry in this lawsuit between Forbes and ABM, instead of in a new interpleader suit under RCW 4.08.160, has no bearing on our analysis.
[7] RCW 36.48.090 reads in relevant part as follows:

Whenever the clerk of the superior court has funds held in trust for any litigant or for any purpose, they shall be deposited in a separate fund designated "clerk's trust fund," and shall not be commingled with any public funds.... The clerk may invest the funds in any of the investments authorized by RCW 36.29.020. The clerk shall place the income from such investments in the county current expense fund to be used by the county for general county purposes unless: (1) The funds being held in trust in a particular matter are two thousand dollars or more, and (2) a litigant in the matter has filed a written request that such investment be made of the funds being held in trust.