# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHARLES R. WOODS, an unmarried man, | No. 48507-9-II |
| Respondent, Cross Appellant, | |
| v. | |
| TOM and KAREN HALL, husband and wife, in their individual and marital capacities; HALLMARK GROUP, LLC, a Washington limited liability company; HARWOODS, LLC, a Washington limited liability company; and RTM ENTERPRISES, LLC, a Washington corporation, | UNPUBLISHED OPINION |
| Appellants, Cross Respondents. | |

SUTTON, J. — This appeal arises from a dispute between Charles Woods and Tom and Karen Hall involving the repossession of certain business assets from a restaurant that Woods owned. The Halls appeal the trial court's order and judgment that they were liable for conversion for selling the restaurant's assets. Woods cross appeals the trial court's order denying him an award of prejudgment interest and attorney fees.

We hold that (1) the trial court's finding of fact, that Woods owned the bar and stove hood, is not supported by substantial evidence; therefore the court erred in imposing conversion liability on the Halls for that property, (2) substantial evidence supports the trial court's findings of fact as to the undisputed assets and the findings support the court's conclusion of law that the Halls converted the undisputed business assets, (3) the trial court properly calculated conversion damages, but that the value of the bar and stove hood must be deducted from the award of damages,

and (4) the trial court did not err by denying Woods prejudgment interest on the damages or by denying Woods an award of attorney fees and costs.

Thus, we affirm the trial court's order and judgment in part and reverse in part. We affirm the trial court's order and judgment in granting Woods's conversion claim on the undisputed business assets, awarding damages on those assets, and denying prejudgment interest and attorney fees and costs to Woods. But we reverse the order and judgment in granting Woods's conversion claim on the bar and stove hood and awarding damages for those two assets. Thus, we remand for the trial court to deduct the amount of those two assets and modify the order and judgment accordingly.

FACTS

I. BACKGROUND

A. RESTAURANT LEASE

Woods formed Harwoods, LLC (Harwoods), to open a restaurant and bar with the same name. In June 2009, Harwoods signed a five-year commercial lease with Hallmark Group, LLC, to rent restaurant space inside the Camas Hotel. The Halls owned Hallmark. Under a lease provision, upon termination of the lease, Harwoods was not to "remove any original improvements installed by [Hallmark], or permanent partitions, attached electrical or plumbing items or other alterations or additions added by [Harwoods]; unless requested by [Hallmark]." Clerk's Papers (CP) at 52. Harwoods was required to remove "all personal property and trade appliance." CP at 52. Under the lease, the Hallmark gave Harwoods a "tenant improvement allowance" to install the stove hood. CP at 49. Woods remodeled the restaurant space and the restaurant opened in January 2010.

B. PURCHASE AND SALE AGREEMENT

In 2011, Woods entered into a purchase and sale agreement (PSA) with the Halls for the Halls to buy Harwoods,[1] and for the Halls to assume the lease. The Halls agreed to make monthly payments of $1,200 to Woods, and granted Woods a security interest in the business's assets as collateral for the loan until the debt was paid. Under the PSA, the Halls granted Woods a security interest in Harwoods's "inventory, equipment, accounts, and supplies." Ex. 1. Upon default, Woods had the remedy of repossessing the "business assets" and had "the right at his discretion to reinstate the current lease agreement." Ex. 1.

The Halls reopened the restaurant under a new name. Because the Halls also owned Hallmark, which owned the Camas Hotel, the Halls took over both the landlord's (Hallmark) and the tenant's (Harwoods) obligations under the lease.

C. DEFAULT AND REPOSSESSION

On June 25, 2012, the Halls notified Woods that they were defaulting on their payments, that they were ready to return the restaurant and all tangible assets, but if Woods did not want to resume operating the restaurant, that they would purchase the assets. The Halls attached a signed transfer of all membership interest in Harwoods to Woods. The Halls stated that if Woods did not respond by July 2, that the Halls would assume that he did not want to resume operating the restaurant and Woods would need to repossess the assets by July 15. On July 15, Woods declined to repossess Harwoods or reinstate the lease; and stated that if the Halls had not made a payment by August 10, he would remove the business assets and stated that the assets included the bar and

---

[1] The PSA included the purchase of the restaurant and all ownership interest in the LLC.

3

stove hood. Over the next several weeks, Woods and the Halls attempted to negotiate retrieval by Woods of the business assets. But the Halls disagreed that the bar and stove hood were subject to repossession by Woods under the PSA because the Halls claimed that these assets were owned by Hallmark under the lease.

As to removal of the assets by Woods, the Halls stated that

[a]ny attempt made to remove these items will be considered conversion and theft. The Halls intend to have police assistance available during the removal of the business assets. Any attempt to remove these fixtures will result in your agents' immediate removal from the premises.

Ex. 48.

On August 24, Woods sent an email to the Halls that stated that Woods, under the PSA,

has elected to repossess all business assets and will do so with a truck, curbside, at **10:00 AM on September 5, 2012**. We demand that your clients cease and desist all business operations immediately to preserve assets and inventory, and that they get all assets and inventory to the door or curbside on September 5 [in] time for retrieval.

Ex. 48. After several more exchanges, they agreed on September 8 as the date for Woods to retrieve the assets, but did not agree on a location.

The Halls agreed to allow Woods to access the restaurant to retrieve the undisputed personal property only. Woods demanded that the assets be delivered curbside and the Halls refused. The Halls then canceled the retrieval date and notified Woods that the Halls' new tenant was interested in some of the assets. Woods responded that he would be retrieving the assets on September 8, as scheduled, and demanded the assets be delivered curbside.

On September 8, Woods arrived with a truck and crew to retrieve the assets. The Halls refused to deliver the assets curbside and Woods refused to enter the premises. Woods left without

4

any of the assets. On September 11, the Halls sent Woods a letter stating that they will consider the assets abandoned if Woods did not retrieve them by September 15. On November 1, the Halls sold the restaurant assets to the new tenant for $10,000.

## II. PROCEDURE

Woods sued the Halls and Hallmark seeking a declaratory judgment and asserting claims for conversion, unjust enrichment, replevin, and judicial foreclosure of security agreement.[2] The Halls and Hallmark denied Woods's claims, asserted affirmative defenses, and filed counterclaims.

During a bench trial, the Halls and Woods testified to the above facts. Woods also testified that the reason he did not enter the building to repossess the assets was because of the Halls' threat of police involvement and his fear that he would be arrested if he attempted to do so. Mr. Hall testified that they refused to put the assets on the sidewalk as Woods had requested because to do so would violate the city's municipal code; there were too many assets to deliver curbside in one day and the assets would need to remain outside overnight; and they would block access to the hotel if left on the sidewalk.

Hall also testified that the installation of the stove hood was complicated, that an exhaust fan was installed on the roof, a 6-8 foot hole was cut into the building wall to install the stove hood, and that the ductwork was welded and attached to the building. Hall also testified that, under the lease, he gave Harwoods an improvement credit to install the stove hood. Hall testified that Harwoods had the bar custom built for the space and the tile flooring abutted against the side of the bar rather than being placed under the bar. Hall also testified that he did not consider the bar

---

[2] Woods also sued the new tenant, who is not a party to this appeal.

or stove hood included in Woods's security interest in Harwoods's inventory, equipment, accounts, and supplies.

The trial court also heard expert testimony from two trade experts. The trade experts testified to the value of the restaurant assets and that it was customary practice to remove the bar and stove hood at the end of a restaurant leasehold. Woods's expert also testified that Woods had purchased the assets at a good bargain and that the value of the assets still represented fair market value.

The trial court granted Woods declaratory judgment and found that "based upon the written agreement with Hall[s'] for the repossession of restaurant assets created an entitlement to ownership and possession of the assets or its value." CP at 21. The trial court also entered an order and judgment in favor of Woods on his claim of conversion. The order stated in relevant part:

> [T]he Hall[s'] claim for abandonment is denied therefore they were under a contractual duty to return the property or its value to Woods. As contemplated in the June 10, 2011 Purchase and Sale Agreement when Hall[s] granted a security interest in equipment to Woods, RCW 62A.9A-609 (Washington Law) applies and after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by secured party which is reasonably convenient to both parties. The evidence provided that throughout the negotiations for repossession the parties debated the characterization of the equipment whether fixed or personal. However, there was never a debate that other than the exhaust hood and bar, other business assets rightfully belonged to Woods. Woods demanded that the property be placed on the sidewalk and [the Halls] refused. Woods testified that because of the law enforcement involvement threat he was uncomfortable coming onto Harwood LLC and/or Hallmark's property. On the other hand, Hall[s'] reliance on a Camas Municipal Code for reasons not to place the property at the secured party's designated location is not persuasive. Because [the Halls] intentionally interfered with chattel belonging to Woods, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession a conversion has occurred.

6

CP at 21-22. The trial court denied all other claims.

The trial court awarded conversion damages based on the fair market value of the assets at the time they were converted on September 8, 2012. The trial court then entered an order and judgment in favor of Woods in the amount of $40,123.04 plus 12 percent interest accruing from October 19, 2015, and ordered that there "shall be no prejudgment interest on this non liquidated (sic) sum." CP at 22. The trial court also ordered that each party shall pay their own attorney fees and costs.

The Halls appeal the trial court's order and judgment in favor of Woods on his claim of conversion. Woods cross appeals the trial court's order denying him prejudgment interest and an award of attorney fees and costs.

ANALYSIS

I. STANDARDS OF REVIEW

Following a bench trial, our review is limited to whether the trial court's findings of fact are supported by substantial evidence, and if so, whether the findings support the trial court's conclusions of law. *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555, 132 P.3d 789 (2006). Substantial evidence is that which is sufficient to persuade a fair-minded individual of the truth of the matter asserted. *Hegwine*, 132 Wn. App. at 555-56. We defer to the fact finder on witness credibility and do not reweigh evidence. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 108, 864 P.2d 937 (1994). We review a trial court's conclusions of law de novo. *Hegwine*, 132 Wn. App. at 556.

We review a denial of an award of prejudgment interest for an abuse of discretion. *Scoccolo Constr., Inc. v. City of Renton*, 158 Wn.2d 506, 519, 145 P.3d 371 (2006); *see also*

RCW 4.56.110; RCW 19.52.020. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; and it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Mayer*, 156 Wn.2d at 684.

## II. OWNERSHIP OF BUSINESS ASSETS

The Halls argue that the trial court's finding of fact, that Woods owned the bar and stove hood, is not supported by substantial evidence. Br. of Appellants at 13; Reply Br. of Appellants at 6. We agree.

"When interpreting a contract, we give ordinary meaning to the words in the contract and try to give effect to the parties' mutual intent." *City of Tacoma v. City of Bonney Lake*, 173 Wn.2d 584, 590, 269 P.3d 1017 (2012) (citing *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982)). "Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used." *Realm, Inc. v. City of Olympia*, 168 Wn. App. 1, 5, 277 P.3d 679 (2012).

Here, under the PSA, the Halls granted Woods a security interest in Harwoods's business assets—the "inventory, equipment, accounts, and supplies." Ex. 1. When the Halls defaulted on the PSA, Woods had the remedy of repossessing the "business assets" and had "the right at his discretion to reinstate the current lease agreement." Ex. 1. Woods chose not to reinstate the lease, thus terminating the lease between Hallmark and Harwoods. To determine what "equipment"

Harwoods owned that was available to Woods to repossess as a secured party, we examine the lease provisions.

Under Article 10 of the lease, upon termination of the lease, Harwoods was not to "remove any original improvements installed by [Hallmark] or permanent partitions, attached electrical or plumbing items or other alterations or *additions* added by [Harwoods]; unless requested by [Hallmark]." CP at 52 (emphasis added). Harwoods was required to remove "all personal property and trade appliance." CP at 52.

Although the lease did not define the terms in the phrase "alterations or additions," when interpreting a lease we give ordinary meaning to the words in the lease to try to give effect to the parties' mutual intent. *See City of Tacoma,* 173 Wn.2d at 590. The testimony at trial established that Woods remodeled the restaurant space, including the addition of a custom bar and commercial stove hood. The testimony by Mr. Hall and the undisputed language of the lease prove that the Hallmark gave Harwoods a "tenant improvement allowance" to install the stove hood. CP at 49. Under the ordinary meaning of the words in the lease, improvements and additions remained with the premises, while personal property was subject to repossession.

Therefore, under the lease, the bar and stove hood were additions to the premises, remained with the restaurant on the termination of the lease, and those assets were owned by Hallmark. Thus, we also hold that the trial court's finding of fact, that the bar and stove hood were Woods's property subject to repossession, is not supported by substantial evidence, and we reverse the trial court's conclusion of law that the bar and stove hood were secured assets.

No. 48507-9

III. CONVERSION

Other than the bar and stove hood, there was no dispute that Woods owned the remaining business assets at issue. However, the Halls argue that (1) the trial court erred by relying upon RCW 62A.9A-609 to conclude that Woods could require the Halls to make the business assets available at the sidewalk and (2) the findings of fact do not support the conclusion of law that the Halls' refusal to place the business assets on the sidewalk constituted conversion, (3) the trial court's findings of fact, that the Halls' defenses were not credible and that Woods was "uncomfortable" coming onto the premises to retrieve the business assets because of the "law enforcement involvement threat," are not supported by substantial evidence, and (4) the remedy of conversion is not an available remedy to a secured creditor. Br. of Appellant at 9; Reply Br. at 9-10. We disagree.

"'[C]onversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession.'" *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 78, 196 P.3d 691 (2008) (internal quotation marks omitted) (quoting *In re Marriage of Langham & Kolde*, 153 Wn.2d 553, 564, 106 P.3d 212 (2005)). Chattel includes movable and transferable property. *Langham*, 153 Wn.2d at 565. Conversion requires the plaintiff to have a possessory or other property interest in the chattel. *Langham*, 153 Wn.2d at 565-66. Interference with chattel includes unlawfully retaining it. *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wn.2d 601, 619, 220 P.3d 1214 (2009). "'[N]either good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action [in conversion].'" *Brown v. Brown*, 157 Wn. App. 803, 818, 239 P.3d 602 (2010) (second alteration in original) (internal quotation marks omitted) (*quoting Langham*, 153 Wn.2d at 560).

10

The *Restatement (Second) of Torts section 237* states that one in possession of a chattel who, on demand, refuses to surrender it to someone entitled to its immediate possession is subject to liability for its conversion. Former RESTATEMENT (SECOND) OF TORTS § 237 (AM. LAW INST.1965). An official comment to section 237 states in relevant part:

> The defendant ordinarily is not required to do more than permit the plaintiff to come and get the chattel. Even where the terms of the agreement under which the defendant is in possession require him to transport and deliver it back to the plaintiff, his refusal to do so may be a breach of the contract, but is not in itself a conversion, unless the circumstances indicate that he is refusing to surrender the chattel at all. But where some simple affirmative act, easily done, such as a disclosure of the location of the chattel, is necessary to permit the plaintiff to take it, the defendant's refusal to perform it may be the full equivalent of a refusal to surrender the chattel.

§ 237 CMT. G.

Under section 237, the Halls would not ordinarily have been required to do more than make the assets available for Woods to retrieve them. *See* § 237 CMT. G. But here, Woods had the right as a secured party to request that the assets be placed at a designated location convenient to both parties under RCW 62A.9A-609(c).[3] And Woods demanded that the assets be placed on the sidewalk which he was entitled to do under RCW 62A.9A-609(c). The undisputed evidence proved that the Halls refused.

---

[3] RCW 62A.9A-609 provides for a secured party's right to take possession after default:

> (c) **Assembly of collateral.** *If so agreed, and in any event after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties.*

(Emphasis added).

11

Further, the trial court was presented with evidence that the Halls threatened police involvement should a dispute arise during repossession of the assets. In corresponding with Woods, the Halls stated that

> [a]ny attempt made to remove these items will be considered conversion and theft. The Halls intend to have police assistance available during the removal of the business assets. Any attempt to remove these fixtures will result in your agents' immediate removal from the premises.

Ex. 48. Woods testified that he reasonably feared that if he attempted to retrieve the other undisputed business assets that he would be arrested. The trial court found that Woods's fear was reasonable and that the Halls' defenses preventing Woods's retrieval of the assets were not credible. We do not reweigh credibility determinations on appeal. *Burnside*, 123 Wn.2d at 108.

The trial court's findings of fact are supported by substantial evidence and the findings support the court's conclusion of law that the Halls intentionally interfered with Woods's right to reclaim the undisputed business assets, and deprived him of possession. Therefore, we hold that the trial court did not err in granting Woods's claim of conversion against the Halls for the undisputed business assets.

## IV. DAMAGES

### A. TRIAL COURT'S DETERMINATION OF DAMAGES

The Halls argue that the trial court erred by awarding damages for conversion based on the purchase price of the assets rather than the fair market value of the assets at the time of conversion. Br. of Appellants at 17; Reply Br. of Appellants at 11. We disagree.

"'Absent willful misconduct, the measure of damages for conversion is the fair market value of the property at the time and place of conversion.'" *Potter*, 165 Wn.2d at 79 (quoting

*Merchant v. Peterson,* 38 Wn. App. 855, 858, 690 P.2d 1192 (1984)). "Fair market value is 'the value for which the property could have been sold in the course of a voluntary sale between a willing buyer and a willing seller, taking into account the use to which the property is adapted or could reasonably be adapted.'" *Potter*, 165 Wn.2d at 79 (quoting *Merchant*, 38 Wn. App. at 859).

Here, the trial court found damages based on the fair market value of the property on the date of conversion, September 8, 2012. The court determined that the value of the secured assets was $40,123.04. This valuation was established by reducing the value of the stove hood and deducting other assets. The trial court's judgment on damages was almost a 50 percent decrease in the amount Woods provided for total business assets based on the purchase price. The assets were purchased and installed in 2009 and 2010, two to three years before the date of conversion in 2012. The trial court also heard testimony from a trade expert that Woods had purchased the assets at a good bargain and that the assets had not depreciated much.

Therefore, we hold that the trial court's determination of damages was based on substantial evidence of the fair market value of the business assets on the date of conversion, September 8. But because Woods did not own the bar and stove hood, as discussed above, Woods is not entitled to damages for the bar and stove hood. Thus, we remand for the trial court to deduct the amount of these two assets from the award of damages and modify the order and judgment accordingly.

B.  PREJUDGMENT INTEREST ON DAMAGES

Woods argues that the trial court erred in denying him prejudgment interest because his damages were for a liquidated amount and readily determinable.  Br. of Cross-Appellant at 18; Reply Br. of Cross-Appellant at 2.  We disagree.

Prejudgment interest may be awarded to a prevailing party when the claim is liquidated. *Spradlin Rock Prod., Inc., v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 665, 266 P.3d 229 (2011).  Liquidated damages are those that can be determined with exactness, and do not require discretion to compute.  *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968).  It is the character of the original claim, not the defense of that claim or the court's ultimate method for awarding damages, that determines whether damages are liquidated.  *Spradlin Rock Prod.*, 164 Wn. App. at 665 (citing *Prier*, 74 Wn.2d at 33).  Prejudgment interest is favored in the law based on the premise that he who retains the money of another which he ought to pay to another should be charged interest on it.  *Prier*, 74 Wn.2d at 34.  However, a defendant should not be required to pay prejudgment interest in cases where he is unable to determine the amount owed.  *Kiewit-Grice v. State*, 77 Wn. App. 867, 873, 895 P.2d 6 (1995).

Here, the damages were unliquidated because the trial court had to rely upon experts' testimony as to the value of the damages.  Because the damages were unliquidated, Woods was not entitled to an award of prejudgment interest.  Thus, we hold that the trial court did not abuse its discretion in denying Woods's request for prejudgment interest.

V. ATTORNEY FEES

Woods argues that the trial court erred by not awarding him attorney fees and costs at trial. Br. of Cross-Appellant at 21. Woods argues that he is a third-party beneficiary under the lease and is entitled to an award of attorney fees and costs at trial under the lease's attorney fee provision. Br. of Cross-Appellant at 22. Alternatively, Woods argues that he is a secured party under the PSA who attempted to repossess assets from a third party, and thus is entitled to an award of attorney fees and costs at trial under RCW 62A.9A-607(d). Br. of Cross-Appellant at 24. Woods also requests appellate attorney fees and costs based on the same grounds. Br. of Cross-Appellant at 25. We disagree that Woods is entitled to an award of attorney fees and costs at trial or on appeal.

Whether a party is entitled to attorney fees is a question of law. *Sanders v. State,* 169 Wn.2d 827, 866, 240 P.3d 120 (2010). "In Washington, attorney fees may be awarded only when authorized by a private agreement, a statute, or a recognized ground of equity." *Labriola v. Pollard Group, Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004).

The lease provided,

> If either Landlord or Tenant or their successors and assigns shall commence any legal proceedings either in court or by arbitration against the other *with respect to the enforcement or interpretation of any of the terms and conditions of this Lease, the non-prevailing party therein shall pay to the other all expenses of said litigation, including reasonable attorneys' fees . . . .*

CP at 63.

Woods prevailed at trial under a claim of conversion, not based on an action to enforce the lease to which he was not a party. [4] Thus, Woods is not entitled to an award of attorney fees under the lease at trial or on appeal.

RCW 62A.9A-607(c)-(d) provides for collection and enforcement by a secured party:

(c) **Commercially reasonable collection and enforcement.** A secured party shall proceed in a commercially reasonable manner if the secured party:

(1) Undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and

(2) Is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor.

(d) **Expenses of collection and enforcement.** A secured party *may deduct* from the collections made pursuant to subsection (c) of this section reasonable expenses of collection and enforcement, including *reasonable attorneys' fees* and legal expenses incurred by the secured party.

(Emphasis added).

The language of RCW 62A.9A.607(c)-(d) allows for a secured party to deduct from the collections made under the statute the reasonable expenses incurred for collection, to include attorney fees and costs. But this language does not provide for an award of attorney fees at trial or on appeal under a tort theory of conversion. Thus, because Woods is not entitled to an award of attorney fees at trial under RCW 4.84.330 or 62A.9A-607(c)-(d), we hold that the trial court did not err in denying Woods an award of attorney fees and costs.

---

[4] Woods relies on RCW 4.84.330, which provides that a unilateral attorney fee provision must be applied to the prevailing party. However, by its terms, RCW 4.84.330 does not apply to an action on a contract that contains a bilateral attorney fee provision. *Kaintz v. PLG, Inc.*, 147 Wn. App. 782, 786–87, 197 P.3d 710 (2008).

Thus, we affirm the trial court's order and judgment in part and reverse in part. We affirm the trial court's order and judgment granting Woods's conversion claim on the undisputed business assets, awarding damages on those assets, and denying prejudgment interest and attorney fees and costs to Woods. But we reverse the order and judgment granting Woods's conversion claim on the bar and stove hood and awarding damages for those two assets. Thus, we remand for the trial court to deduct the amount of those two assets and modify the order and judgment accordingly.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, J.

MAXA, A.C.J.